

FILED

2012 Jul-20  PM 02:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| CURTIS J. COLLINS, | § | |
|     Plaintiff, | § | **Civil Action Number** |
| | § | **2:11-CV-0938-AKK** |
| v. | § | |
| | § | |
| EXPERIAN INFORMATION | § | **OPPOSED** |
| SOLUTIONS, INC., | § | |
|     Defendant. | § | |


## DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S
## MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT


Dated:  July 20, 2012

L. Jackson Young, Jr.
Ferguson Frost & Dodson, LLP
2500 Acton Road, Suite 200
Birmingham, Alabama 35243
(205) 380-6984 - telephone
(205) 879-8831 - telecopier
Email: ljy@ffdlaw.com

and

Gregory Hanthorn (ASB-4664-N76G)
Jones Day
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309
(404) 581-3939 - telephone
(404) 581-8330 - telecopier
Email: ghanthorn@jonesday.com


**COUNSEL FOR EXPERIAN
INFORMATION SOLUTIONS, INC.**

{W0327756.1 }

# TABLE OF CONTENTS

**Page**

I.    ISSUE STATEMENT ................................................................................. 2

II.   STATEMENT OF UNDISPUTED MATERIAL FACTS ............................... 3

    A.    Equable Ascent Financial, LLC sued Mr. Collins ................................ 3

    B.    Experian reinvestigated the Equable account that Mr. Collins disputed .............. 3

    C.    None of Mr. Collins's alleged harm is tied to an Experian report ........................ 6

    D.    Mr. Collins has other potentially negative information in his Experian file that may impact his credit worthiness ................................................... 6

III.   NATURE AND STAGE OF PROCEEDING ................................................ 7

IV.   ARGUMENT AND AUTHORITIES ........................................................... 7

    A.    Background of the Fair Credit Reporting Act ....................................... 7

    B.    Mr. Collins's claims under the FCRA fail as a matter of law ............................. 9

    C.    Mr. Collins has no evidence of willfulness necessary to support statutory or punitive damages under federal law ................................................. 17

    D.    Because there is no evidence of malice or willful intent to injure Plaintiff, the FCRA preempts Plaintiff's common law claims ........................................... 20

    E.    Plaintiff's common law claims fail because there is no evidence Experian issued an inaccurate report ................................................................ 20

    F.    All of Mr. Collins's claims fail because he has no evidence of causation or legally caused damages .................................................................... 22

V.    CONCLUSION .......................................................................................... 28

## <u>TABLE OF AUTHORITIES</u>

**Page**

**FEDERAL CASES**

*Cahlin v. Gen. Motors Acceptance Corp.*,
   936 F.2d 1151 (11th Cir. 1991) ..........................................................8, 9, 10, 13, 14, 15, 22, 27

*Casella v. Equifax Credit Info Servs.*,
   56 F.3d 469 (2d Cir. 1995)............................................................................................11, 27

*Cousin v. Trans Union*,
   246 F.3d 359 (5th Cir. 2001) .............................................................................13, 18, 22, 27

*Davis v. Equifax Information Services, LLC*,
   346 F. Supp. 2d 1164 (N.D. Ala. 2004)..............................................................................13, 14

*Hyde v. Hibernia National Bank in Jefferson Parish*,
   861 F.2d 446 (5th Cir. 1988) ...........................................................................................10, 11

*Jackson v. Equifax Information Services, LLC*,
   167 Fed. Appx. 144 (11th Cir. 2006)................................................................................22

*Johnson v. Equifax, Inc.*,
   510 F. Supp. 2d 638 (S.D. Ala. 2007)..............................................................................22

*Morris v. Trans Union LLC*,
   420 F.Supp. 2d 733 (S.D. Tex. 2005) ..............................................................................11

*Renninger v. ChexSystems*,
   No. 98 C 669, 1998 WL 295497 (N.D. Ill. May 22, 1998) ....................................................10

*Safeco Ins. Co. of Am. v. Burr*,
   551 U.S. 47 (2007)........................................................................................................8, 17

*Stevenson v. TRW Inc.*,
   987 F.2d 288 (5th Cir. 1993) ...........................................................................................14

*Thomas v. Gulf Coast Credit Service Inc.*,
   214 F. Supp. 2d 1228 (M.D. Ala. 2002) .....................................................................9, 11, 27

*Thornton v. Equifax, Inc.*,
   619 F.2d 700 (8th Cir. 1980) ...........................................................................................8

*Wantz v. Experian Info. Solutions*,
   386 F.3d 829 (7th Cir. 2004) ...............................................................................8, 11, 12, 27

**STATE CASES**

*Carter v. Treadway Trucking, Inc.*,
    611 So. 2d 1034 (Ala. 1992) ............................................................................21

*Sessions v. Nonnenmann*,
    842 So. 2d 649 (Ala. 2002) ..............................................................................21

*Vines v. Plantation Motor Lodge*,
    336 So. 2d 1338 (Ala. 1976) ............................................................................21

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

15 U.S.C. § 1681(b) ..................................................................................................8

15 U.S.C. § 1681e(b) ...........................................................................................7, 8, 9

15 U.S.C. § 1681h(e) .........................................................................................13, 20

15 U.S.C. § 1681i(a) ...........................................................................................7, 9, 11

15 U.S.C. § 1681i(a)(1)(A) .................................................................................8, 11

15 U.S.C. § 1681i(a)(6) ............................................................................................7

15 U.S.C. § 1681n ..................................................................................................17

15 U.S.C. § 1681o ..................................................................................................22

## <u>MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT</u>

In this Fair Credit Reporting Act case, Plaintiff Curtis Collins alleges that Defendant Experian Information Solutions, Inc. ("Experian") inaccurately reported information obtained from Equable Ascent Financial, a company with which Mr. Collins has settled his claims.  Mr. Collins also seeks to represent a class of individuals who, he contends, did not receive sufficient information about how Experian reinvestigated their disputes arising when companies sued in small claims court and lost.  Yet, the undisputed record evidence in this case reveals that Experian did not provide a credit report containing the disputed information to any entity that made any credit or other adverse decision involving Mr. Collins.  In short, a vital element of Mr. Collins's individual claims – a credit report containing the challenged information – is simply not present.

Experian is entitled to summary judgment on Mr. Collins's claims alleged in the First Amended Complaint ("FAC" or "Amended Complaint") because:

- Mr. Collins has provided no evidence Experian reported any inaccurate information to a third party;

- Experian acted reasonably as a matter of law;

- Mr. Collins has provided no evidence of willfulness, wantonness, or actual malice required to recover punitive damages against Experian;

- Mr. Collins's state law claims are preempted; and

- Discovery has revealed no evidence of damage caused by any allegedly inaccurate report or information.

## I.   ISSUE STATEMENT

Mr. Collins claims Experian is liable to him under the Fair Credit Reporting Act ("FCRA") because Experian negligently and willfully failed to: (1) follow reasonable procedures to assure the maximum possible accuracy when preparing consumer reports about him containing his Equable Account xxx1237; and (2) conduct a reasonable reinvestigation of disputed information and provide him adequate notice of the reinvestigation results.  Mr. Collins also claims Experian is liable for negligence and wantonness for the same reasons.  These claims fail because the undisputed record evidence establishes that Experian did not provide a credit report containing the challenged information to any entity that made an adverse credit decision concerning Mr. Collins.

To establish reasonable procedure and reinvestigation claims, a consumer must provide evidence that the reporting agency issued an inaccurate report to a third party that caused him harm.  The record demonstrates that the companies Mr. Collins asserted had denied credit to him did not request or receive copies of a report from Experian during the time Mr. Collins was challenging the information.  In addition, Mr. Collins has admitted that he has no evidence that he suffered any harm linked to any allegedly inaccurate Experian report, and he admits that Experian provided him a way to review the results of the reinvestigation.  Accordingly, Mr. Collins's claims fail.

## II.  STATEMENT OF UNDISPUTED MATERIAL FACTS

**A.  Equable Ascent Financial, LLC sued Mr. Collins.**

Equable sued Mr. Collins in small claims court in April 2010 to collect a prior debt Collins owed to GE Capital related to Account xxx6246 that GE Capital assigned to Equable.[1]  Mr. Collins admits that he had a credit card with GE Capital, and that he owed money to GE Capital when he stopped making payments.[2]  On July 26, the small claims court held against Equable.[3]  None of the pleadings in the small claims record reference Equable Account xxx1237.[4]

**B.  Experian reinvestigated the Equable account that Mr. Collins disputed.**

Within days of the hearing, Experian received a letter from someone claiming to be Mr. Collins.[5]  The letter referenced only Equable Account xxx1237 and stated that Equable had sued Mr. Collins to recover a debt and lost, but did not include any of the pleadings or orders from that case.[6]  Instead, the letter suggested that Experian call the small claims court or Equable's counsel.[7]  Mr. Collins never referred to GE Capital Account xxx6246 or indicated that it was related to the Equable account.[8]

---

[1] *See* Ex. A (Collins Depo. Tr.) at  8:23-9:3; Ex. B (Small Claims File) at B3 (produced by Mr. Collins in discovery); FAC (Docket No. 29) at ¶¶  5-7.
[2] *See* Ex. A (Collins Depo. Tr.) at 7:4-7:20.
[3] Ex. B (Small Claims File) at B8.
[4] *See* Ex. B (Small Claims File) at B2-8.
[5] *See* Ex. C (Iwanski Depo. Tr.) at 26:19-28:5, 29:2-29:23.
[6] *See* Ex. D (August Dispute Letter) at D2.
[7] *See id.*
[8] *See id.*

The letter, however, was mailed from a different zip code than Mr. Collins's home address and did not contain any attached documents indicating that it came directly from him.[9]  As such, Experian believed that the letter had not been sent by Mr. Collins.[10]  Consistent with its policies to protect consumer's private information, Experian sent Mr. Collins a letter on August 9 asking him to confirm that he had sent the dispute letter.[11]

Mr. Collins responded on or about September 1 and provided a copy of his driver's license and Social Security card.[12]  This letter did not refer to GE Capital Account xxx6246, indicate that it was related to the Equable account, or provide any of the underlying court documents.[13]  Because Mr. Collins did not provide any supporting documentation about the small claims suit, Experian contacted the source of the data, Equable.[14]  Experian asked Equable to review the information Experian had in its files related to the disputed account and verify whether Experian's records were accurate.[15]  Experian did this by sending an Automated Consumer Dispute Verification form ("ACDV") to Equable.[16]  In the section describing the reason for the dispute, Experian conveyed Mr. Collins's dispute as

---

[9] *See* Ex. A (Collins Depo. Tr.) at 67:19-68:9; Ex. D (August Dispute Letter) at D2.
10 *See* Ex. C (Iwanski Depo. Tr.) at 26:19-28:5, 29:2-29:23.
[11] *See* Ex. C (Iwanski Depo. Tr.) at 29:2-30:11, 58:16-60:8; Ex. E (Experian Aug. Letter) at E2.
[12] *See* Ex. F (September Dispute Letter) at F2-3.
[13] *See id* at F2-4.
[14] *See* Ex. C (Iwanski Depo. Tr.) at 94:2-94:10, 97:25-98:9.
[15] *See id*.; Ex. G (ACDV) at G2.
[16] *See* Ex. C (Iwanski Depo. Tr.) at 94:2-94:10, 97:25-98:9; Ex. G (ACDV) at G2.

"EQUABLE ASCENT SUED ME FOR THIS DEBT IN JEFFERSON COUNTY ALABAMA AND I WON."[17]  In his deposition, Mr. Collins admitted that the language in the ACDV adequately conveyed his dispute.[18]  Equable informed Experian that the information Equable had previously provided was correct.[19]

Experian's system generated an investigation results summary that was sent to Mr. Collins on September 9, 2010.[20]  The summary informed him that Experian completed investigating any items he had disputed, and that he could visit Experian's website to check the status of his dispute at any time and receive a full copy of his corrected report.[21]  Mr. Collins admits that when he first received the investigation summary he saw that option.[22]  The letter also provided an address that Mr. Collins could write to for a copy of the report.[23]

On November 23, 2010 Mr. Collins visited Experian's website and accessed his Experian consumer disclosure and saw that the Equable account was still being reported.[24]  Experian removed the Equable account on March 10, 2011.[25]

---

[17] *See*  Ex. G (ACDV) at G2.
[18] *See* Ex. A (Collins Depo. Tr.) at 76:1-77:14.
[19] *See* Ex. C (Iwanski Depo. Tr.) at 94:19-96:13; Ex. G (ACDV) at G2.
[20] *See* Ex. H (Investigation Summary) at H2.
[21] *See* Ex. A (Collins Depo. Tr.) at 26:8-14; Ex. H (Investigation Summary) at H2.
[22] *See* Ex. A (Collins Depo. Tr.) at 26:8-14.
[23] *See* Ex. H (Investigation Summary) at H2.
[24] *See* Ex. A (Collins Depo. Tr.) at 26:15-28:2; Ex. I (November Disclosure Mr. Collins Pulled from Experian's Website) (produced by Collins during discovery) at I2, I7.
[25] *See* Ex. C (Iwanski Depo. Tr.) at 141:12-141:24.

**C.** **None of Mr. Collins's alleged harm is tied to an Experian report.**

In Interrogatory responses Mr. Collins claimed that Sears, Geico, PACE Couriers, and an unidentified mortgage company (in May 2011) took adverse actions against him after reviewing an Experian report.[26] Yet, Mr. Collins admits he cannot verify if any third party received an Experian report containing inaccurate information.[27] Experian's records indicate that none of those third parties requested or received information from Experian about Mr. Collins.[28] In fact, Mr. Collins's Experian disclosure shows that only CitiFinancial requested any information about him while the Equable account was reporting, and CitiFinancial had already begun foreclosure proceedings when it made the request.[29] Mr. Collins did not provide any correspondence or communications with CitiFinancial during discovery so there is no evidence what action, if any, CitiFinancial took or even what information CitiFinancial requested and received.

**D.** **Mr. Collins has other potentially negative information in his Experian file that may impact his credit worthiness.**

During the time Mr. Collins claims the Equable trade line was harming him, his Experian consumer file contained 15 other accounts with potentially negative

---

[26] *See* Ex. J (Experian's Interrogatories) at Nos. 3, 4, 7, 12 [at J5-7]; Ex. K (Collins's Interrogatory Responses) at Nos. 3, 4 [at K3]; Ex. L (Collins's Amended Interrogatory Responses) at Nos. 7, 12 [at L2-3, L5-6]; Ex. A (Collins Depo. Tr.) at 30:7-10, 43:2-7.

[27] *See* Ex. J (Experian's Interrogatories) at Nos. 7, 12 [at J6-7]; Ex. L (Collins's Amended Interrogatory Responses) at Nos. 7, 12 [at L2-3, L5-6]; Ex. A (Collins Depo. Tr.) at 42:1-12.

[28] *See* Ex. M (June 2011 Disclosure) at M15.

[29] *See id.* at M6-7, M15.

information.[30]  The potentially negative accounts include a bankruptcy[31] and a

home foreclosure by CitiFinancial[32], both of which Mr. Collins admits are accurate.

Mr. Collins admits that he has no evidence that any of these accounts may be

inaccurate.[33]

## III. <u>NATURE AND STAGE OF PROCEEDING</u>

Discovery ended on June 22, 2012, and Mr. Collins has marshaled no

admissible evidence to support his claims.  At this point, Experian is entitled to

summary judgment.  The Amended Complaint alleges FCRA violations by

Experian for failure to: follow reasonable procedures under 15 U.S.C.

§ 1681e(b),[34] perform a reasonable reinvestigation under 15 U.S.C. § 1681i(a),

and provide a proper consumer disclosure under 15 U.S.C. § 1681i(a)(6).[35]  Mr.

Collins also alleged violations based on Alabama state law for negligent, reckless,

malicious, and intentional conduct and negligent hiring, training and supervising.

## IV. <u>ARGUMENT AND AUTHORITIES</u>

### A.    Background of the Fair Credit Reporting Act

Congress designed the FCRA to meet "the needs of commerce for consumer

credit, personnel, insurance, and other information" while also ensuring "the

---

[30] *See* Ex. A (Collins Depo. Tr.) at 38:10-39:11, 71:1-72:15, Ex. M (June 2011 Disclosure) at
M4-11.
[31] *See* Ex. A (Collins Depo. Tr.) at 53:9-20.
[32] *See*  Ex. A (Collins Depo. Tr.) at 57:13-20.
[33] *See id.* at 91:5-17.
[34] FAC (Docket No. 29) at ¶ 61.
[35] FAC (Docket No. 29) at ¶ 62.

confidentiality, accuracy, relevancy, and proper utilization" of consumer information.[36]  Congress recognized that consumer reporting agencies are integral in making credit accessible and established "the legitimacy of credit reports as a necessary adjunct of commerce for consumer credit, personnel matters, insurance and other needed information."[37]  Balancing those goals, the FCRA requires that consumer reporting agencies "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."[38]  The statute also imposes a duty on consumer reporting agencies to conduct a reasonable reinvestigation into any item disputed by a consumer.[39]

The FCRA is not a strict liability statute.  In *Cahlin v. General Motors*, the Eleventh Circuit made clear that the FCRA "does not make reporting agencies strictly liable for all inaccuracies."[40]  Rather, the FCRA recognizes that no credit reporting system can be entirely flawless, and thus reporting agencies are required only to follow reasonable procedures and conduct reasonable reinvestigations.[41]

---

[36] 15 U.S.C. § 1681(b).
[37] *See Thornton v. Equifax, Inc.*, 619 F.2d 700, 703 (8th Cir. 1980).
[38] 15 U.S.C. § 1681e(b).
[39] 15 U.S.C. § 1681i(a)(1)(A).
[40] *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156, 1160 (11th Cir. 1991).
[41] *Wantz v. Experian Info. Solutions*, 386 F.3d 829, 833 (7th Cir. 2004), *abrogated on other grounds by*, *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56-58 (2007) (interpreting the statute for a reinvestigation claim).

**B.      Mr. Collins's claims under the FCRA fail as a matter of law.**

The Eleventh Circuit requires plaintiffs to prove five elements to make out a *prima facie* violation of 15 U.S.C. § 1681e(b) (the "reasonable procedures" provision).  A plaintiff must prove: (1) the consumer reporting agency prepared a report; (2) the report contained inaccurate information; (3) the inaccuracy resulted from failing to follow reasonable procedures, and (4) the inaccurate report caused harm.[42]  Likewise, the Eleventh Circuit requires a plaintiff to allege and prove multiple elements to make a claim under 15 U.S.C. § 1681i(a) (the "reasonable reinvestigation" provision).  Specifically, "[a] section 611(a) [1681i(a)] claim is properly raised when **a particular credit report** contains a factual deficiency or error that could have been remedied by **uncovering additional facts** that provide a more accurate representation about a particular entry…".[43]  Thus, the plaintiff must prove: (1) the consumer reporting agency prepared a report; (2) the report contained inaccurate information; (3) the reinvestigation was not reasonable under the circumstances; (4) the inaccuracy could have been discovered and remedied by uncovering additional facts; and (5) the plaintiff suffered damages as a result of the inaccurate report.[44]  Here, the undisputed record rebuts Mr. Collins's claims.

---

[42] *Cahlin*, 936 F.2d at 1156.

[43] *See Cahlin*,  936 F. 2d at 1160 (emphasis supplied).

[44] *See Cahlin*, 936 F. 2d at 1160; *Thomas v. Gulf Coast Credit Service Inc.,* 214 F. Supp. 2d 1228, 1236, 1237 (M.D. Ala. 2002).

This section first addresses the elements common to his FCRA claims, and then addresses the unique reinvestigation elements.  Damages, however, are addressed in the final section for all claims.

1.    **The record contains  no evidence that Experian issued an inaccurate report.**

To begin with, Mr. Collins's FCRA claims fail as a matter of law because he has not established that Experian provided a creditor with a report containing the disputed information.  To maintain either a reinvestigation or reasonable procedures FCRA claim, a plaintiff must first provide evidence that the reporting agency issued a consumer report containing inaccurate information.[45]  The "statute does not allow suit against the credit agency for creating, possessing, or revealing to a consumer credit files containing erroneous information…."[46]  An erroneous report must be issued <u>to a third party</u>.[47]  When, as here, a plaintiff fails to satisfy that initial burden, the plaintiff cannot establish a violation as a matter of law, and a court need not inquire further as to the reasonableness of the procedures adopted by a reporting agency.[48]  Likewise, without an inaccurate report a court need not

---

[45] *See Cahlin*, 936 F.2d at 1156, 1160 (establishing that an inaccurate report is required under either section of the FCRA).

[46] *See Hyde v. Hibernia Nat'l Bank in Jefferson Parish*, 861 F.2d 446, 449 (5th Cir. 1988).

[47] *See Cahlin*, 936 F.2d at 1156, 1160; *Hyde*, 861 F.2d at 449. A report issued only to a consumer is not a consumer report, but a disclosure. *See Renninger v. ChexSystems*, No. 98 C 669, 1998 WL 295497 at *4-5 (N.D. Ill. May 22, 1998).

[48] *See Cahlin*, 936 F.2d at 1156.

inquire into the reasonableness of the reinvestigation.[49]  Other courts, including the

Second, Fifth, and Seventh Circuits, agree with the Eleventh that there is no

violation of the reinvestigation section unless the consumer proves that inaccurate

information was included on a consumer report.[50]

Mr. Collins's FCRA claims fail because there is no evidence showing that

any third party took action based upon an inaccurate report Experian issued to any

third party during the time the Equable account information was in his Experian

file.  Mr. Collins has not come forward with any letters from creditors reflecting

that credit was denied or any other adverse action was taken based on information

in an Experian report.  Mr. Collins claimed in Interrogatory responses that he

suffered adverse actions because Experian issued an inaccurate report containing

the Equable account information to Sears, Geico insurance, an unknown mortgage

---

[49] Even though *Cahlin* requires an inaccurate report to make out a §1681i(a) claim, other courts have noted that the statute itself does not seem to explicitly require such a report.  These courts, however, recognize that in the absence of such a report, a plaintiff cannot assert damages and thus has no cause of action. *See, e.g., Thomas*, 214 F. Supp. 2d at 1237.

[50] *See Wantz*, 386 F.3d at 834 (holding that the plaintiff must show Experian provided a consumer report to a third party to satisfy the elements of his reinvestigation claim); *Casella v. Equifax Credit Info Servs.,* 56 F.3d 469, 475 (2d Cir. 1995) (affirming a district court's holding because plaintiff  failed to show that any creditor or other person ever learned of the derogatory information from a credit reporting agency); *Hyde*, 861 F.2d at 448; *Morris v. Trans Union LLC*, 420 F.Supp. 2d 733, 751 (S.D. Tex. 2005) ("The statute imposes a consumer reporting agency the duty to investigate any item disputed  by a consumer, regardless of the ultimate determination on accuracy. *See* 15 U.S.C. § 1681i(a)(1)(A). At the same time, case law and common sense dictate that a consumer may bring a claim under the FCRA for negligent non-compliance only when an inaccuracy has been included on his credit report.  Absent an inaccuracy in a credit report that was published to a third party, no damages proximately caused by an FCRA violation would result").

lender in May 2011, and his employer (PACE).[51]  Yet, Mr. Collins has not

produced any evidence that these third parties received his Experian consumer

report, and Experian's records indicate that Experian never provided any

information about Mr. Collins to Sears, Geico, or PACE during the time the

Equable account was in his consumer file.[52]

    In addition, Experian's records show that no mortgage lender requested or

received any information about Mr. Collins in May 2011.[53]  Regardless, the

Equable account was removed from Mr. Collins's Experian file in March 2011,

and would not have been included in a May 2011 consumer report.[54]

    Without evidence that any of these third parties Mr. Collins identified

received an Experian report, Mr. Collins fails to present any evidence to support

the first element of either FCRA claim.  "[W]ithout such a (consumer) report, there

could be no duty to follow reasonable procedures regarding the report, nor could

damages flow from a breach of that duty."[55]  Mr. Collins's FCRA claims fail.

### 2. Mr. Collins's FCRA claims fail because Experian's procedures and reinvestigation were reasonable as a matter of law.

    Mr. Collins's "reasonable procedures" claim also fails because he cannot

---

[51] *See* Ex. J (Experian's Interrogatories) at Nos. 3, 4, 7, 12 [at J5-7]; Ex. K (Collins's Interrogatory Responses) at 3, 4 [at K3]; Ex. L (Collins's Amended Interrogatory Responses) at Nos. 7, 12 [at L2-3, L5-6]; Ex. A (Collins Depo. Tr.) at 43:6-7, 44:17-19.
[52] *See* Ex. M (June 2011 Disclosure) at M15.
[53] *See id.*
[54] *See* Ex. C (Iwanski Depo. Tr.) at 141:12-141:24.
[55] *Wantz*, 386 F.3d at 834. (holding that the plaintiff must show Experian provided a consumer report to a third party to satisfy the elements of his reinvestigation claim).

satisfy the element that Experian failed to follow reasonable procedures to assure the accuracy of its consumer reports.[56] Reporting agencies like Experian are not liable under the "reasonable procedures" provision merely for reporting inaccurate information as the FCRA is not a strict liability statute.[57]  Rather, liability is incurred only for failing to follow reasonable procedures to ensure maximum possible accuracy of reported information.[58]  This standard is set against what a reasonable person would do under the circumstances.[59]  Thus, summary judgment is appropriate when an agency's procedures are reasonable as a matter of law.[60]

Here, Mr. Collins has no evidence that Experian failed to follow reasonable procedures in preparing a consumer report containing information about him. Setting aside the fact that Mr. Collins has no evidence that Experian issued an inaccurate report at all, the only evidence of Experian's procedures is that Experian utilizes rigorous quality control and statutory compliance procedures, in the face of massive amounts of information, in an attempt to ensure that only accurate information is reported.[61]  There is no record evidence showing that Equable was not reputable or a reliable source of information, and Mr. Collins did not provide

---

[56] *See Cahlin*, 936 F.2d at 1156.
[57] *Id.*
[58] *Id.*
[59] *Cousin v. Trans Union*, 246 F.3d 359, 368 (5th Cir. 2001).
[60] *See, e.g., Davis v. Equifax Information Services, LLC*, 346 F. Supp. 2d 1164, 1171, 1173 (N.D. Ala. 2004) (granting summary judgment on § 1681e(b) and § 1681i(a) claims because the undisputed facts showed the consumer reporting agency's investigation and preparation of the report complied with the FCRA as a matter of law).
[61] *See* Ex. N (Hughes Depo. Tr.) at 35:24-36:6.

copies of any information for Experian to examine.  Thus, to the extent that Experian prepared a consumer report, the only evidence indicates that Experian followed its reasonable procedures in preparing the report.

Therefore, as held by an Alabama district court in *Davis v. Equifax*, summary judgment is appropriate because the reinvestigation was reasonable as a matter of law.[62]  In *Davis*, the consumer reporting agency conducted a reinvestigation "by contacting the furnishers of the information, notifying them of the nature of the dispute, and asking them to investigate the information currently being reported" and notifying the plaintiff of "what items had been investigated and the results of each investigation" upon receiving a response from the creditor.[63]  The court granted summary judgment in favor of the consumer reporting agency, finding this investigation procedure "reasonable and sufficient under the FCRA."[64]  Admittedly, a reporting agency may have a duty to go beyond this type of reinvestigation, but only in very limited circumstances such as a particularly complex dispute or when the reliability of the source's data is challenged.[65]

Here, Experian followed the same procedures that the *Davis* court declared reasonable as a matter of law.  As Mr. Collins did not provide any documentation supporting his claim that he prevailed in a small claims lawsuit related to Equable

---

[62] *See Davis*, 346 F. Supp. 2d at 1171, 1173.
[63] *Id*. at 1173.
[64] *Id*.
[65] *See Stevenson v. TRW Inc*., 987 F.2d 288, 293 (5th Cir. 1993).

Account xxx1237, Experian contacted Equable and explained Mr. Collins's dispute as "EQUABLE ASCENT SUED ME FOR THIS DEBT IN JEFFERSON COUNTY ALABAMA AND I WON."[66]  Mr. Collins conceded that Experian accurately conveyed his dispute[67]  Equable responded by modifying the amount past due, charge off amount, balance date, and account type code.[68]  There is no evidence that his dispute was complex or that Experian should not have trusted the reliability of Equable's records.

> **3.**      **Mr. Collins's reinvestigation claim fails because Experian could not reasonably have uncovered any additional information.**

Further, Mr. Collins has no factual support that Experian could have uncovered any additional information had it reinvestigated further.  *Cahlin* requires the plaintiff to prove that Experian could have uncovered additional information and corrected an inaccurate report through the reinvestigation.[69]  Here, the evidence indicates that nothing Experian could have done would have uncovered any additional information.  In his letters to Experian, Mr. Collins suggests that Experian should have contacted Equable and the small claims court.  Experian did contact Equable.[70]  Moreover, nothing in the small claims record referred to

---

[66] *See* Ex. G (ACDV) at G2.
[67] *See* Ex. A (Collins Depo. Tr.) at  76:3-77:14.
[68] *See* Ex. C (Iwanski Depo. Tr.) at 94:19-96:13; Ex. G (ACDV) at G2.
[69] *Cahlin*, 936 F.2d at 1160.
[70] *See* Ex. C (Iwanski Depo. Tr.) at 94:2-94:10; Ex. G (ACDV) at G2.

Equable Account xxx1237.[71]  Rather, as Mr. Collins concedes, all of the pleadings

in small claims court refer to a completely different account number.[72]  Therefore,

even if Experian had contacted the small claims court, it would not have uncovered

any additional information about Equable Account xxx1237.  Instead, Experian

would have received only information related to GE Capital Account  xxx6246.

4.    **Mr. Collins's improper disclosure claim fails because Experian provided Mr. Collins full access to his Experian consumer file in multiple ways.**

Experian's procedures require it to send an investigation summary to a

consumer following a valid reinvestigation request.[73]  The summary explains what

actions were taken and provides a description of the specific disputed trade line.[74]

The summary also explains that a consumer can log into Experian's website and

see the status of their dispute or access a full consumer disclosure at any time.[75]

Mr. Collins claims that Experian's investigation summary was insufficient,

because he could not determine the outcome of the reinvestigation.[76]  Yet, Mr.

Collins admits that the summary informed him that he could access his full report

and see the status of his dispute at any time by visiting Experian's website, and that

---

[71] *See* Ex. A (Collins Depo. Tr.) at 13:18-14:14; Ex. B (Small Claims File) (including the Judgment) at B2-8.
[72] *See* Ex. A (Collins Depo. Tr.) at 13:18-14:18, 15:19-16:15.
[73] *See* Ex. C (Iwanski Depo. Tr.) at 111:10-111:15; Ex. N (Hughes Depo. Tr.) at 14:10-15:11.
[74] *See id.*
[75] *See* Ex. C (Iwanski Depo. Tr.) at 108:20-109:4; Ex. N (Hughes Depo. Tr.) at 14:10-15:11.
[76] *See* Ex. A (Collins Depo. Tr.) at 89:11-90:6.

he did in fact go to Experian's website and pull his disclosure.[77]  Mr. Collins

admits that he saw the online option when he first received the summary.[78]

Moreover, when he pulled his disclosure from the website he saw the Equable

account had not been removed.[79]  Thus, he knew the outcome of the dispute.  The

summary also informed Mr. Collins that he could write to Experian for a full copy

of his disclosure.[80]

**C.    Mr. Collins has no evidence of willfulness necessary to support statutory or punitive damages under federal law.**

Further, Mr. Collins has no factual support to establish his claims for

statutory and punitive damages.  The FCRA requires a plaintiff seeking statutory or

punitive damages to prove a willful violation.[81]  Supreme Court precedent requires

that willful conduct must be either knowing or reckless.[82]  Recklessness is an

"action entailing an unjustifiably high risk of harm that is either known or so

obvious that it should be known."[83]  Therefore, Mr. Collins must prove that

Experian acted with the knowledge that its conduct was unlawful, or acted in spite

of an unjustifiably high risk of violating the law.  Courts have interpreted this as

requiring the agency to have "knowingly and intentionally committed an act in

---

[77] *See* Ex. A (Collins Depo. Tr.) at 26:8-14; Ex. I (November Disclosure) at I2-20.
[78] *See* Ex. A (Collins Depo. Tr.) at 26:8-14.
[79] *See* Ex. A (Collins Depo. Tr.) at 27:21-29:3.
[80] *See* Ex. H ( Investigation Summary) at H2.
[81] 15 U.S.C. § 1681n.
[82] *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56-58 (2007).
[83] *Id.* at 68-69.

conscious disregard for the rights of others" such as through concealment or misrepresentation.[84]

Assuming *arguendo* that Experian had somehow violated the FCRA, Mr. Collins cannot cite to any evidence showing Experian acted knowingly or recklessly in violation of the FCRA.  Upon receiving the dispute letter that seemed suspicious on its face because it came from a different zip code than where Mr. Collins resided and appeared to be from a mass mailing, Experian contacted Mr. Collins security purposes and asked him to confirm it was him making the request.[85]  When asked if Experian offended him when it sent that letter asking him to confirm his identify, Mr. Collins testified "I don't know."[86]

After receiving sufficient identification information from Mr. Collins, Experian contacted Equable about the disputed account.[87]  Mr. Collins testified that Experian adequately conveyed his dispute to Equable during the reinvestigation.[88] Following the reinvestigation, Mr. Collins admits that Experian sent him a letter indicating that it has completed the reinvestigation.[89]  Mr. Collins concedes that when he received the letter from Experian he saw that he could log onto Experian's

---

[84] *Cousin,* 246 F.3d at 369 n.15.
[85] *See* Ex. C (Iwanski Depo. Tr.) at 29:2-30:11, 58:16-60:8; Ex. E (Experian Aug. Letter) at E2.
[86] *See* Ex. A (Collins Depo. Tr.) at 21:12-23:15.
[87] *See* Ex. C (Iwanski Depo. Tr.) at 94:2-94:10, 97:25-98:9; Ex. G (ACDV) at G2.
[88] *See* Ex. A (Collins Depo. Tr.) at 76:3-77:14.
[89] *See* Ex. A (Collins Depo. Tr.) at 25:12-25:21.

website at any time to check the status of the dispute.[90]  Experian's letter also explained that he could visit Experian's website and pull a full disclosure or write to Experian and request one.[91]  Mr. Collins admits that he did access his Experian report shortly after the reinvestigation through  Experian's website.[92]  After his single reinvestigation request, Mr. Collins admitted that he never contacted Experian to follow up on his dispute.[93]

Even more telling, Mr. Collins does not recall if Experian tried to hide anything from him.[94]  He does not recall whether Experian went out of its way to hurt him, and admits that he never had an unpleasant call with Experian.[95]  Finally, Mr. Collins never provided any of the small claims paperwork to Experian to assist in resolving his dispute.[96]

In short, Mr. Collins can cite to no admissible evidence allowing a reasonable person to even infer willfulness.  Experian never misrepresented or concealed any information from Mr. Collins.  In fact, Experian offered multiple ways for Mr. Collins to review his Experian disclosure and he admits that he did in fact review his full disclosure.  Thus, Experian is entitled to summary judgment on Mr. Collins's claims for statutory and punitive damages under the FCRA.

---

[90] *See* Ex. A (Collins Depo. Tr.) at 26:8-:14.
[91] *See* Ex. H (Investigation Summary) at H2.
[92] *See* Ex. A (Collins Depo. Tr.) at 25:15-27:3; Ex. I (November Disclosure) at I2-20.
[93] *See* Ex. A (Collins Depo. Tr.) at 27:21-28:3.
[94] *See* Ex. A (Collins Depo. Tr.) at 68:17-69:2.
[95] *See* Ex. A (Collins Depo. Tr.) at 60:8-21.
[96] *See* Ex. F (September Dispute Letter) at F2-5.

**D.      Because there is no evidence of malice or willful intent to injure Plaintiff, the FCRA preempts Plaintiff's common law claims.**

Mr. Collins's common law claims of negligence, including negligence, negligent hiring, supervising, and training are specifically preempted by 15 U.S.C. § 1681h(e), which bars such actions unless the plaintiff proves the reporting agency provided "false information furnished with malice or willful intent to injure such consumer."[97]  As discussed above, Mr. Collins has no evidence of willfulness, much less evidence that Experian acted maliciously or with a willful intent to injure, and Experian is entitled to summary judgment.

**E.      Plaintiff's common law claims fail because there is no evidence Experian issued an inaccurate report.**

Mr. Collins also alleges "Experian violated its respective duties to Plaintiff and such duties were made intentionally, recklessly, wantonly, maliciously, and/or negligently."[98] The Amended Complaint does not specify what duties, but the causes of action appear to be premised on the same allegations underlying the FCRA claims—namely inaccurate reporting and failing to conduct a reasonable reinvestigation.  Mr. Collins also claims Experian acted either negligently or wantonly in the hiring, training, and/or supervising of its employees.[99]  These

---

[97] 15 U.S.C. § 1681h(e).
[98] *See* FAC (Docket No. 29) at ¶ 79.
[99] *See id.* at ¶  82.

claims are preempted and, moreover, suffer from the same deficiencies outlined above.[100]

Similarly, any state law wantonness/willfulness claims also require "some degree of consciousness on the part of the defendant that injury is likely to result from his act or omission."[101]  Wantoness requires similar conduct as willfulness under the FCRA.  Specifically:

> [w]antonness is not merely a higher degree of culpability than negligence.  Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability.  Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury.  To be guilty of wanton conduct, one must, with reckless indifference to the consequences, consciously and intentionally do some wrongful act or omit some known duty, and to be actionable, that act or omission must produce the plaintiff's injury.[102]

Even if Mr. Collins had evidence that Experian issued an inaccurate report or insufficient reinvestigation summary, he has no evidence that Experian did so with reckless indifference, and no evidence that this caused any of the alleged damages (see below).  Likewise, he has no proof that Experian hired, trained, or supervised its employees with reckless indifference.  His wantonness/willfulness claims fail.

---

[100] *Sessions v. Nonnenmann*, 842 So. 2d 649, 651 (Ala. 2002); *Vines v. Plantation Motor Lodge*, 336 So. 2d 1338, 1339 (Ala. 1976).

[101] *See Carter v. Treadway Trucking, Inc*., 611 So. 2d 1034, 1035 (Ala. 1992).

[102] *Id*. (internal citations and quotation marks omitted).

**F.     All of Mr. Collins's claims fail because he has no evidence of causation or legally caused damages.**

Most importantly, Mr. Collins cannot satisfy the damages element for any of his claims because he has no evidence of actual damages caused by Experian.  To recover under the FCRA §§ 1681e(b) and 1681i(a) for negligence, Mr. Collins must prove actual damages caused by Experian.[103]  To prove actual damages under the FCRA, a plaintiff must put forth evidence "tending to show he was damaged as a result of an allegedly inaccurate [Experian] credit report."[104]  Other Circuits follow the same rule.[105]  Likewise, to recover for his common law negligence and wantonness claims he must establish causation and prove actual damages, which necessarily requires Experian to report inaccurate information to a third party.

Mr. Collins's alleged harm falls into five categories: (1) credit denials; (2) increased insurance premiums; (3) less favorable interest rate on a prospective home loan; (4) lost employment opportunities; and (5) emotional distress.[106]  Mr. Collins's lack of evidence supporting each category is analyzed in detail below.

---

[103] 15 U.S.C. § 1681o.

[104] *Cahlin*, 936 F.2d at 1160-61; s*ee also Johnson v. Equifax, Inc.*, 510 F. Supp. 2d 638, 647 (S.D. Ala. 2007) (citing *Jackson v. Equifax Information Services, LLC*, 167 Fed. Appx. 144, 146 (11th Cir. 2006)); *Thomas*, 214 F. Supp. 2d at 237.

[105] *See Cousin*, 246 F.3d at 369-70 (reversing a district court's award of damages when insufficient evidence was presented to show a Trans Union report caused a credit denial); *see also* note 50, *supra* (establishing that a plaintiff must prove the reporting agency issued an inaccurate report to recover under the FCRA).

[106] *See* Ex. J (Experian's Interrogatories) at Nos. 3, 4, 7, 12 [at J5-7]; Ex. K (Collins's Interrogatory Responses) at Nos. 3, 4 [at K3]; Ex. L (Collins's Amended Interrogatory Responses) at Nos. 7, 12 [at L2-3, L5-6].

1.     **Mr. Collins cannot tie his alleged Sears denial to an Experian consumer report.**

Despite his allegations in the Amended Complaint of the grave financial harm he suffered, in discovery Mr. Collins confirmed that he suffered only one credit denial; he claimed that Sears refused to give him a credit card because of an Experian consumer report.[107]  He admits that he did not apply for any other credit during this time, except a mortgage loan discussed below.[108]

Mr. Collins, however, did not produce any admissible support.  He claims he received a letter from Sears denying his application, but does not recall what it said.[109]  He did not produce this letter in discovery, and he does not recall if Sears pulled a Trans Union, Equifax, or Experian report.[110]  Experian's records, however, show that Sears never requested or received a consumer report containing Mr. Collins's information from Experian.[111]  Thus, Mr. Collins's claim for damages related to Sears denying him credit are not attributable to any Experian report.

2.     **Mr. Collins cannot tie the alleged Geico premium increase to an Experian consumer report.**

Mr. Collins also alleges that Experian provided an inaccurate report to Geico

---

[107] *See id*; Ex. A (Collins Depo. Tr.) at  61:12-62:10, 63:23-64:7.
[108] *See* Ex. J (Experian's Interrogatories) at Nos. 3, 4 [at J5]; Ex. K (Collins's Interrogatory Responses) at Nos. 3, 4 [at K3].
[109] *See* Ex. A (Collins Depo. Tr.) at 61:12-62:10.
[110] *Id.*
[111] *See* Ex. M (June 2011 Disclosure) at M15.

that resulted in an increased insurance premium.[112]  Again, Mr. Collins, did not

produce any letter from Geico or other documentation to support his claim.[113]  He

claims he received a letter from Geico related to this increase, but does not recall

what it said.[114]  He does not recall if the letter stated that Geico pulled a Trans

Union, Equifax, or Experian report.[115]  Moreover, Experian's records show that

Geico never requested or received a consumer report containing Mr. Collins's

information from Experian.[116]  Thus, Mr. Collins's claim for damages related to his

Geico premium is not attributable to any Experian report.

### 3. Mr. Collins cannot tie the alleged unfavorable interest rate to an Experian consumer report.

Mr. Collins further alleges that in May 2011 Experian provided an

inaccurate report to a prospective mortgage lender whom Mr. Collins cannot

recall.[117]  Much like the Sears and Geico claims, Mr. Collins admits that he does

not know if the prospective lender relied upon an Experian report.[118]  He has

produced no evidence indicating what the rate actually offered was or what the rate

could have been but for the Equable account.  He admits that he did not accept the

---

[112] *See*  Ex. J (Experian's Interrogatories) at Nos. 3, 4 [at J5]; Ex. K (Collins's Interrogatory Responses) at Nos. 3, 4 [at K3]; Ex. A (Collins Depo. Tr.) at 30:7-11.
[113] *See* Ex. A (Collins Depo. Tr.) at 31:17-20, 33:20-34:7.
[114] *See* Ex. A (Collins Depo. Tr.) at 33:7-34:11.
[115] *See id.*
[116] *See* Ex. M (June 2011 Disclosure) at M15.
[117] *See*  Ex. J (Experian's Interrogatories) at Nos. 3, 4 [at J5]; Ex. K (Collins's Interrogatory Responses) at Nos. 3, 4 [at K3]; Ex. A (Collins Depo. Tr.) at 62:11-63:17, 64:8-12.
[118] *See* Ex. J (Experian's Interrogatories) at Nos. 7, 12 [at J6-7]; Ex. L (Collins's Amended Interrogatory Responses) at 7, 12 [at L2-3, L5-6]; Ex. A (Collins Depo. Tr.) at 62:11-63:17, 64:8-12.

terms the lender offered.[119]  Again, Experian's records indicate that no mortgage

lender accessed any information about Mr. Collins in May 2011.[120]  Even if they

had, the Equable account would not have been included in the information

provided to the lender as it had been removed months prior and thus could not have

had any connection to the alleged increased interest rates.[121]  In addition, Mr.

Collins testified that he decided to rent instead of seek a mortgage.[122]

### 4.   Mr. Collins cannot tie his alleged lost employment opportunities to an Experian report.

Mr. Collins also alleges that Experian reported inaccurate information to his

employer causing him to lose out on advancement opportunities and salary

increases.[123]  During the time Mr. Collins disputed the Equable account he worked

for one company, PACE.[124]  He produced no evidence that PACE requested or

received information from Experian.  Experian's records confirm that PACE never

requested or received any information about Mr. Collins.[125]  Thus, his damages

claim for lost employment opportunities are not attributable to an Experian report.

---

[119] *See* Ex. A (Collins Depo. Tr.) at 62:11-63:17, 64:8-12.
[120] *See* Ex. M (June 2011 Disclosure) at M15.
[121] *See*  Ex. C (Iwanski Depo. Tr.) at 141:12-141:24.
[122] *See* Ex. A (Collins Depo. Tr.) at 57:21-23, 62:11-18.
[123] *See*  Ex. J (Experian's Interrogatories) at Nos. 7, 12 [at J6-7]; Ex. L (Collins's Amended Interrogatory Responses) at 7, 12 [at L2-3, L5-6].
[124] *See* Ex. A (Collins Depo. Tr.) at 44:17-44:19, 46:7-15.
[125] *See* Ex. M (June 2011 Disclosure) at M15.

5.      **Mr. Collins has no admissible evidence that his alleged harm resulted from the Equable account rather than his general credit history.**

Moreover, during the time the disputed Equable account was contained in his Experian file, Mr. Collins admitted that he had other credit problems that could have been reported to any third party seeking his consumer report.[126]  He admitted his home was foreclosed by CitiFinancial just before he claims he sought a new home loan.[127]  He admits he filed for bankruptcy.[128]  Both the bankruptcy and the foreclosure were contained in his Experian file and might have been included in an Experian report during the time he disputed the Equable account.[129]  Further, despite his post litigation decision to dispute every other negative item in his consumer disclosure, he admitted in his deposition that he has no proof that any of those accounts were inaccurate.[130]  Thus, even if Experian had issued a report to the only entities Mr. Collins identified -- Sears, Geico, the mortgage lender, or PACE – there would have been no evidence that they based their respective decisions on how Experian reported the Equable Account xxx1237 rather than the other negative accounts.  Again, however, the Court need not reach this issue because none of those entities requested or received a credit report from Experian after Mr. Collins disputed the Equable information.

---

[126] *See* Ex. A (Collins Depo. Tr.) at 63:4-17, 69:17-73:7.
[127] *See* Ex. A (Collins Depo. Tr.) at 56:19-57:20.
[128] *See* Ex. A (Collins Depo. Tr.) at 53: 9-23.
[129] *See* Ex. A (Collins Depo. Tr.) at 63:4-17.
[130] *See* Ex. A (Collins Depo. Tr.) at 38:10-39:11, 91:5-17.

### 6.      Mr. Collins cannot recover for emotional distress.

Moreover, under the FCRA, Mr. Collins cannot recover damages for

emotional distress without the issuance of an inaccurate consumer report to a third

party.[131]  Mr. Collins must present some "evidence tending to show that he was

damaged as a result of an allegedly inaccurate [Experian] credit report."[132]  It is not

sufficient to worry about future inaccurate reports.[133]

Mr. Collins admits, however, that he cannot verify whether Experian ever

provided a consumer report to a third party.[134]  Because Mr. Collins cannot show

that these alleged harms were caused by Experian reporting inaccurate information,

he cannot show that Experian caused his emotional distress.

### 7.      Mr. Collins has no evidence showing he suffered any harm due to Experian's alleged defective investigation summary.

Finally, Mr. Collins claims that the investigation summary Experian

provided was insufficient, because he was unable to learn the outcome of the

---

[131] *See Cousin*, 246 F.3d at 369-70 (5th Cir.) (reversing a district court's award of damages when insufficient evidence was presented to show a Trans Union report caused a credit denial); *Wantz*, 386 F.3d at 834 (7th Cir.) (affirming that the plaintiff must show Experian provided a consumer report to recover emotional distress damages on his reinvestigation claim); *Casella*, 56 F.3d at 475 (2d Cir.) (affirming a district court's holding because "we do not believe a plaintiff can recover for pain and suffering when he has failed to show that any creditor or other person ever learned of the derogatory information from a credit reporting agency."); *Thomas*, 214 F. Supp. 2d at 1236 n.9, 1237 (M.D. Ala.) (holding that without showing a report was issued to a third party, a plaintiff cannot recover under with FCRA provision for emotional distress).
[132] *See Cahlin*, 936 F.2d 1160-61.
[133] *See Thomas*, 214 F. Supp. 2d at 1236, n.9.
[134] *See* Ex. Ex. J (Experian's Interrogatories) at Nos. 7, 12 [at J6-7]; Ex. L (Collins's Amended Interrogatory Responses) at 7, 12 [at L2-3, L5-6]; Ex. A (Collins Depo. Tr.) at 42:1-12.

reinvestigation.[135]  Yet, Mr. Collins admits that upon receiving the investigation summary, he saw that he could log onto Experian's website at any time to check the status of his dispute.[136]  Further, Mr. Collins admits that he did log into Experian's website and review his updated disclosure.[137]  Finally, he has produced no evidence showing how logging into the website rather than receiving a hard copy of the disclosure harmed him.

## V.  **CONCLUSION**

For the reasons set forth above Experian's Motion for Summary Judgment should be granted.

---

[135] *See* Ex. A (Collins Depo. Tr.) at 89:11-90:6.

[136] *See* Ex. A (Collins Depo. Tr.) at 26:8-14; Ex. H (Investigation Summary) at H2.

[137] *See* Ex. A (Collins Depo. Tr.) at 26:15-27:2, 27:21-28:2; Ex. I (November Disclosure) at I2-20.

Dated:  July 20, 2012                          Respectfully submitted,


                                               /s/ *L. Jackson Young, Jr.*
                                               _____
                                               L. Jackson Young Jr.
                                               *Attorney for Experian Information*
                                               *Solutions, Inc.*


**OF COUNSEL:**
Ferguson Frost & Dodson, LLP
2500 Acton Road, Suite 200
Birmingham, Alabama 35243
(205) 380-6984 - telephone
(205) 879-8831 - telecopier
Email: ljy@ffdlaw.com

**OF COUNSEL**:
Gregory Hanthorn (ASB-4664-N76G)
Jones Day
1420 Peachtree Street,
N.E. Suite 800
Atlanta, Georgia 30309
(404) 581-3939 - telephone
(404) 581-8330 - telecopier
Email: ghanthorn@jonesday.com
*Attorneys for Experian Information*
*Solutions, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was  served to counsel for all parties through the Court's ECF system on the 20th day of July, 2012, to:

Wesley L. Phillips, Esq.
PHILLIPS LAW GROUP LLC
Post Office Box 130488
Birmingham, Alabama 35213-0488
Email: wlp@wphillipslaw.com
*Attorney for Plaintiff*

s/ *L. Jackson Young, Jr.* _____
Of Counsel

HUI-153030v1

{W0327756.1 }                                    -30-