FILED
2012 Aug-13  PM 08:20
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| **CURTIS J. COLLINS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No: 2:11-CV-938-AKK** |
| | ) | |
| **EXPERIAN INFORMATION** | ) | |
| **SOLUTIONS, INC.;** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT EXPERIAN'S MOTION FOR SUMMARY JUDGMENT

Dated: August 13, 2012

David L. Selby II
Bailey & Glasser, LLP
One Chase Corporate Dr Ste 400
Birmingham , AL 35244-7001
Telephone: (205) 313-6490
Email: dselby@baileyglasser.com


Wesley L. Phillips
Phillips Law Group, LLC
Post Office Box 130488
Telephone: (205) 383-3585
Facsimile: (800) 536-0385
Email: wlp@phillipslaw.com

**COUNSEL FOR PLAINTIFF
CURTIS J. COLLINS**

# TABLE OF CONTENTS

**<u>Page</u>**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

Appendix . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  vi

    I.      Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

    II.     Issues Before the Court . . . . . . . . . . . . . . . . . . . . . . . . . .  4

    III.    Statement of Disputed and Irrelevant Facts  . . . . . . . . . .  5

    IV.    Statement of Undisputed Material Facts . . . . . . . . . . . . .  8

    V.     Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

          A.    A Genuine Issue of Material Fact Exists as to Whether Defendant Conducted a Reasonable Reinvestigation of the Equable Dispute under Section 1681i.

          B.    Defendant Recklessly Disregarded the Law in its Reinvestigation of the Equable Dispute.

          C.    Plaintiff is Entitled to Statutory and Punitive Damages under Section 1681n.

          D.    Plaintiff is Entitled to Recover His Actual Damages under Section 1681o.

          E.    Defendant Acted with Reckless Disregard in Performing its Investigation of the Equable Dispute.

          F.    Defendant was Negligent in the Training and Supervision of its Employees.

G.   Plaintiff's Section 1681i(a)(6) Claim is the Class Claim which is not Ripe for Resolution.

VI.   Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

TABLE OF AUTHORITIES

**Cases:**                                                     **Page(s)**

*Apodaca v. Discover Fin. Servs.,*
    417 F.Supp.2d 1220, 1230-31 (D.N.M.2006) . . . . . . . . . . . . .  18

*Bakker v. McKinnon,* 152 F.3d 1007, 1013 (8th Cir.1998) . . . . . . . .  25

*Bradshaw v. BAC Home Loans Servicing, LP,*
    816 F.Supp.2d 1066, 1073, 1074 (9th Cir. 2011) . . . . . . . . . . .  18

*Brim v. Midland Credit Management, Inc.,*
    795 F. Supp. 2d 1255, 1260-61 (N.D. Ala. 2011) . . . . . . . . . .  26

*Carter v. Treadway Trucking*, *Inc.*,
    611 So. 2d. 1034, 1035 (Ala. 1992)  . . . . . . . . . . . . . . . . . . . .  27

*Casella v. Equifax Credit Info. Servs.,*
    56 F.3d 469, 474 (2d Cir. 1995)  . . . . . . . . . . . . . . . . . . . . . . .  25

*Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir.2001) . . .  18

*Cushman v. Trans Union Corp.,*
    115 F.3d 220, 225, 227 (3rd Cir. 1997)  . . . . . . . . . . . . . . . . . .  17, 19, 23

*Guimond v. Trans Union Credit Information Co.,*
    45 F.3d 1329, 1332-33 (9th Cir.1995)  . . . . . . . . . . . . . . . . . .  25

*Harris v. Mexican Specialty Foods, Inc.,*
    564 F.3d 1301, 1310 (11th Cir. 2009) . . . . . . . . . . . . . . . . . . .  22

*Henson v. CSC Credit Services*, 29 F.3d 280 (7th Cir. 1994)  . . . . . . .  17

*Jordan v. Equifax Information Services, LLC,*
    410 F.Supp.2d 1349, 1357 (N.D.Ga. 2006)  . . . . . . . . . . . . . .  18, 24-25

*King v. Asset Acceptance, LLC,*
     452 F. Supp. 2d 1272, 1281 (N.D. Ga. 2006) . . . . . . . . . . . . 26

*Levine v. World Financial Network Nat. Bank,*
     437 F.3d 1118, 1123 (11th Cir. 2006) . . . . . . . . . . . . . . . . . . . . 24, 25

*Moore v. Equifax Information Services, LLC,*
     333 F. Supp. 2d 1360, 1365 (N.D. Ga. 2004) . . . . . . . . . . . . . 25

*Nunnally v. Equifax Info. Servs., LLC*, 451 F.3d 768, 771, 172
     (11th Cir.2006) *citing* 15 U.S.C. § 1681i(a)(1)(A) . . . . . . . . . . 30

*Philbin v. Trans Union Corp.,*
     101 F.3d 957, 963 n. 3 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . 25

*Reynolds v. Hartford Fin. Servs. Group, Inc.*,
     435 F.3d 1081, 1098 (9th Cir.2006) . . . . . . . . . . . . . . . . . . . . 23

*Safeco Ins. Co. of America v. Burr*, 127 S.Ct. 2201, 2210 (2007) . . . 22

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 53, 68, 71 (2007) . . . . . 22, 24

*Sarver v. Experian Info. Solutions*,
     390 F.3d 969, 970-971 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . 17

**Statutes:**

15 U.S.C. § 1681e(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 19, 30

15 U.S.C. § 1681i . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3, 4, 17, 30

15 U.S.C. § 1681i(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 19-20

15 U.S.C. § 1681i(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

15 U.S.C. § 1681i(a)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30

15 U.S.C. § 1681n(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

15 U.S.C. § 1681n(a)(1)(2) . . . . . . . . . . . . . . . . . . . . . . 24

15 U.S.C. § 1681o 25

15 U.S.C. § 1681o(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## EXHIBIT LIST

### Exhibit Description

1  Pleading in the District Court of Jefferson County Alabama

2  Curtis Collins' Initial Dispute Letter and Envelope

3  Experian Credit Report, June 6, 2010

4  Deposition Transcript of Curtis Collins

5  Deposition Transcript of Teresa Iwanski

6  Experian's Response of August 9, 2010

7  Curtis Collins' Second Dispute Letter and Documents

8  Deposition Transcript of Kimberly Hughs

9  ACDV

10  Experian's Response of September 9, 2010

11  Plaintiff's Interrogatory Responses

12  Plaintiff's Amended Interrogatory Responses

13  Deposition Transcript of Allison Collins

14  Deposition Transcript of Gabrielle Collins

15  Credit Report of November 23, 2010

16  Credit Report of February 28, 2011

COMES NOW Plaintiff Curtis Collins and hereby responds in opposition to Experian's Motion for Summary Judgment as follows:

## I. <u>INTRODUCTION</u>

Evidence unearthed during discovery confirms that Plaintiff, Curtis Collins, has suffered damages from Defendant's violations of the Fair Credit Reporting Act ("FCRA") and certain state law claims.  At a minimum, genuine issues of material fact exist as to (1) whether Defendant breached its duty to conduct a reasonable reinvestigation of Plaintiff's credit report in violation of 15 U.S.C. § 1681i, (2) whether Defendant breached its duty in a manner that was negligent, reckless, wanton, and/or malicious and intentional in violation of Alabama law, and (3) whether Defendant was negligent in its hiring, supervising and training of its employees with respect to its treatment of Plaintiff's credit report in violation of Alabama law – all as alleged in Counts II, V, and VI the First Amended Complaint (the "Complaint").

Plaintiff no longer pursues the 15 U.S.C. § 1681e(b) claim found in Count II of the Complaint that Defendant violated the FCRA by failing to maintain the maximum possible accuracy in relation to his credit report.  Further, Plaintiff no longer maintains of the claims found in Counts III and IV of the Complaint because

of insufficient proof that Defendant published to a third party Plaintiff's credit report containing inaccurate information.[1]

Contrary to Defendant's representations, however, the lack of proof as to third party publication of Plaintiff's factually inaccurate credit report **does not** mandate judgment for Defendant on Plaintiff's § 1681i claim.  Defendant blatantly misleads the Court in stating that third party publication is an indispensable element of a § 1681i claim.  Defendant's Motion for Summary Judgment, at 1 -2 (the "Motion").  The law of this Circuit places no such burden on Plaintiff to prove his § 1681i claim.  Plaintiff is entitled to relief under § 1681i because Defendant breached its duty to undertake a reasonable reinvestigation of his dispute regarding the Equable Ascent Financial, LLC trade line on his credit report (the "Equable dispute").  Despite Defendant's blatant attempts to characterize otherwise, it matters not one iota to the merits of Plaintiff's § 1681i claim whether Defendant ever sent Plaintiff's credit report to any entity.  Defendant is simply wrong to state otherwise.  As shown herein, whether Defendant's reinvestigation of Plaintiff's Equable dispute was reasonable is a quintessential issue of fact falling squarely with the purview of the trier of fact.  Defendant likely misstates the law on § 1681i because it knows that the reasonableness of its reinvestigation is a classic jury issue.  The reasonableness of

---

[1] The Court has reserved for a later determination Plaintiff's class claims alleged in Count VII of the Complaint. (Doc. 31 - Order)

Defendant's reinvestigation alone is a genuine issue of material fact compelling a denial of Defendant's Motion.

In sum, Defendant is not entitled to summary judgment because:

- Section 1681i does not require a credit report be published to a third-party for a consumer to prevail under this section;

- Defendant did not act reasonably as a matter of law in conducting its reinvestigation of the Equable trade line;

- Discovery has revealed that Defendant acted willfully, wantonly, or with actual malice so as to entitle Plaintiff to punitive damages;

- Plaintiff's claims under Alabama law are not preempted; and

- The record unquestionably shows Plaintiff suffered damages from Defendant's unlawful conduct.

The essence of this case is whether Defendant conducted a reasonable reinvestigation of the Equable dispute under these undisputed facts: After winning a judgment against Equable in Alabama court, Plaintiff informed Equable by certified mail that he had won his dispute against Equable and did not owe Equable any money. In response to Plaintiff's letter, Defendant's reinvestigation consisted solely of taking a single action, namely contacting Equable about the dispute. Defendant intentionally did not act on any of the specific information that Plaintiff provided to Defendant to verify that Plaintiff did not owe Equable a dime. In particular, Plaintiff provided Defendant with the name and phone number of the agents of Equable, its attorneys,

who could have readily told Defendant that Plaintiff did not owe Defendant a cent.

Yet, Defendant purposefully did not call the very agents of the only source of its

reinvestigation who had the most knowledge of the Equable dispute.   Plaintiff

provided Defendant with the phone number of the clerk of the Alabama court which

granted judgment against Equable.  The clerk could have easily told Defendant that

Equable was not entitled to a cent from Plaintiff.  Yet, Defendant purposefully did not

call the clerk – a disinterested third party.   Instead of performing a reasonable

reinvestigation, Defendant performed no meaningful reinvestigation.  In this situation,

a rational jury could certainly find that Defendant did not conduct a reasonable

reinvestigation of the Equable dispute.   Accordingly, the Court should deny

Defendant's Motion.

## II.  <u>ISSUES BEFORE THE COURT</u>

The issue before the Court is whether genuine issues of material fact exist

as to Plaintiff's claims that (1) Defendant breached its duty to conduct a reasonable

reinvestigation of Plaintiff's credit report in violation of 15 U.S.C. § 1681i, (2)

Defendant breached its duty in a manner that was negligent, reckless, wanton, and/or

malicious and intentional in violation of Alabama law, and (3) Defendant was

negligent in its hiring, supervising and training of its employees with respect to its

treatment of Plaintiff's credit report in violation of Alabama law.  As shown herein,

-4-

genuine issues of material facts exist such that Defendant is not entitled to summary judgment on these claims.

Whether Defendant's reinvestigation of the Equable dispute was reasonable is a quintessential jury question. Defendant has not shown that its reinvestigation was reasonable as a matter of law since it did not perform the modicum of tasks that courts have established as a baseline of reasonableness. Defendant's reinvestigation consisted of merely contacting the source of the inaccurate information, namely, Equable, – an action which courts have found to be insufficient to constitute a reasonable reinvestigation. The testimony of Defendant's employees reveal that they purposefully did not undertake a more substantive reinvestigation and were not trained to properly reinvestigation Plaintiff's dispute. The record amply shows that genuine issues of material fact exist as to Plaintiff's claims such the Court should deny Defendant's Motion.

## III. <u>STATEMENT OF DISPUTED AND IRRELEVANT FACTS</u>

Defendant claims that the first letter they received was "from someone claiming to be Mr. Collins" and that Defendant "believed" it was not sent from Collins.[2] Defendant's support of this theory is a singular reference to Ms. Teresa Iwanski's deposition testimony.[3] Ms. Iwnanski was the 30(b)(6) witness designated

---

[2] Defendant's Motion for Summary Judgment (Doc. 49) at ¶ B.

[3] *Id.*.

by Defendant to testify as to the "reinvestigation" claims.[4]  When Ms. Iwanski was pressed about her theory that the first letter did not come from Mr. Collins she admitted that she did not have any personal knowledge of that fact, and that she never spoke to a single Experian employee who handled Mr. Collins dispute.[5]  Defendant makes the statement that this first letter never referred to a GE Capital Account.[6]  As Defendant is well aware, whether Mr. Collins owed money to GE Capital is irrelevant. It was Equable that sued Mr. Collins, not GE Capital, and the trade line Mr. Collins disputed on his credit report was Equable, not GE Capital.[7]

      Although Defendant claims the first dispute letter Defendant received was from a person claiming to be Mr. Collins, the record evidence shows it was actually from Mr. Collins.[8]  Defendant's other 30(b)(6) representative acknowledged that "in hindsight" there is no way to simply look at the documents and determine why Defendant decided to reject the first letter and require more information.[9]  When

---

[4] *See* Pl. Exhibit 5 (Iwanski Depo. Tr.) at 4:21-22.

[5] *See* Id. at 18:13-19, 30:2-11, 34:12-15, 38:3-5

[6] *See* Doc. 49 at ¶ B.

[7] *See* Pl Exhibit 1 (Jeff Co. Dist Ct Pleadings).

[8] *See* Pl. Exhibit 4, (Collins Depo Tr.) at 10:12-10:20; 67:19-68:9.

[9] *See* Pl. Exhibit 8, (Hughes Depo Tr.) at 56:12-57-19

Defendant rejected the first dispute letter they sent Mr. Collins an automated form letter that required "him to confirm that he had sent the [first] dispute letter."[10]

Defendant acknowledges that Mr. Collins responded to their request for information and provided a copy of his driver license and Social Security card, but gives the caveat, that this second letter did not refer to GE Capital and did not enclose the court documents from the Equable small claims suit.[11]   This caveat is very misleading.  The FCRA does not require a consumer disputing a trade line to "include any pleadings or orders"  and Defendant acknowledges that they were aware of this fact.[12]  Also, once again, Mr. Collins did not refer to the GE Capital account because he was not disputing a GE Capital trade line.[13]  Defendant next attempts to shift the blame on Mr. Collins and states that "[b]ecause Mr. Collins did not provide any supporting documentation about the small claims suit, Experian contacted the source of the data, Equable,"  implying that Defendant had requested this information from Mr. Collins as part of their reinvestigation.[14]  During the investigation of the dispute, Defendant never asked Mr. Collins to provide copies of the small court claims file.[15]

---

[10] (Doc. 49) at ¶ B

[11] *Id.*

[12]*See* 15 U.S.C. §1681i; Pl. Exhibit 8, (Hughes Depo Tr.) at 37:1-7.

[13]*See* Pl. Exhibit 2  (Collins' Initial Dispute Letter and Envelope).

[14] (Doc. 49) at ¶ B.

[15] *See* Pl. Exhibit 6 (Experian's Response of August 9, 2010).

Defendant then generated a report of their final investigation which was sent to Mr. Collins and Defendant tries to make it sound as if Mr. Collins could have verified the results by looking online.[16]  Mr. Collins' testified he did not see in the report prepared by Experian where he could check the status of his dispute online,[17] however, even if he had, he would have learned nothing more than what he already knew, that the Equable trade line had merely been "updated."[18]

Whether Mr. Collins' credit reports contain "other negative information" is irrelevant as to whether Experian violated the FCRA and Mr. Collins suffered damages because of Experian's reckless violations of the FCRA.[19]

## IV.  STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff was sued by Equable in the District Court of Jefferson County.[20] Plaintiff answered the complaint denying he owed Equable any money.[21]  On July 26, 2010, upon hearing the evidence in this matter, the court entered judgment in favor of

---

[16] (Doc. 49) at ¶ B

[17] *See* Pl. Exhibit 4, (Collins Depo Tr.) at 88:11-89:7.

[18] *See* Pl. Exhibit 8, (Hughes Depo Tr.) 15:6-15:16.

[19] *See* Pl. Exhibit 4, (Collins Depo Tr.) at 42:13-43:1; Exhibit 13, (A. Collins Depo Tr.) at 9:1-9:8; 10:1-10:18; Pl. Exhibit 14, (G. Collins Depo Tr.) at 11:13-15; 12:7-12:16; 16:14-17:1.

[20] *See* Pl. Exhibit 1 (Jeff Co. Dist Ct Pleadings), p. 1.

[21] *See* Pl. Exhibit 1, p. 6.

Plaintiff.[22]  Contrary to Defendant's assertions, <u>all</u> of the pleadings in the Alabama court referenced Equable as the party that sued Plaintiff over an alleged debt.[23]  Thereafter, Plaintiff disputed with Defendant <u>only</u> the Equable trade line, not any other trade line, including the G.E. Capital account which Defendant references unnecessarily to distract the Court from the unreasonableness of its behavior.[24]  In fact, the Equable dispute was the only trade line on Plaintiff's credit report when he initiated the dispute with Defendant and provided Defendant with the specific information Defendant needed to confirm that its information concerning the Equable trade line was inaccurate.[25]

Defendant poorly attempts to divert attention from its unreasonable reinvestigation by claiming incredulously that it thought the initial dispute letter did not come from Plaintiff because the letter was sent from a zip code different from the one for Plaintiff's home.[26]  The zip code on Plaintiff's letter is irrelevant – Defendant had a duty to act on the specific information Plaintiff provided to Defendant to learn that its information about the Equable trade line was inaccurate.  Instead of conducting

---

[22]*See* Pl. Exhibit 1, p. 7.

[23]*See* Pl. Exhibit 1.

[24]*See* Pl. Exhibit 2 (Collins' Initial Dispute Letter and Envelope), p.1.

[25]*See* Pl. Exhibit 3 (Experian Credit Report, June 6, 2010), p. 5.

[26]*See* Pl. Exhibit 4, (Collins Depo Tr.) at 67:19-68:9.

a reasonable reinvestigation, Defendant did the opposite – it refused to take any action and forced Plaintiff to provide it with yet more information.  Defendant was forcing Plaintiff to take action while refusing to take any investigation itself.

Since Defendant refused to comply with its duties under the FCRA, Plaintiff sent a second dispute letter to Experian along with a copy of his drivers' license and social security card – information unreasonable demanded before it would take <u>any</u> action to reinvestigate the Equable dispute.[27]  In the second dispute letter, Plaintiff <u>again</u> provided Defendant the Equable account number, still the only account he was disputing, <u>again</u> told Defendant that Equable sued him and lost in Alabama court and <u>again</u> provided the Alabama case number.[28]

After sending <u>two</u> dispute letters for the <u>same</u> Equable trade line, Plaintiff had provided Defendant with an abundance of specific information for Defendant to expeditiously learn with minimal effort that its information regarding the Equable trade line was inaccurate.  For example, Plaintiff had told Defendant the Equable account number, that Equable had lost its case against him, the court which had entered judgment against Equable, the case number, the clerk of the court's phone number, the name of Equable's agents (i.e., its attorneys) who had the best knowledge that Plaintiff did not owe Equable any money related to this trade line, and the phone

---

[27]*See* Pl. Exhibit 7 (Collins' Second Dispute Ltr), pp. 1-2; *See also* 15 U.S.C. §1681i(a).

[28]*See* Pl. Exhibit 7 (Collins' Second Dispute Ltr and Docs), p. 1.

number of Equable's attorneys.[29]  Despite receiving this wealth of information from

Plaintiff, Defendant performed a single action to reinvestigate the Equable dispute –

Defendant contacted Equable, its client which had just lost to Plaintiff in Alabama

court, and asked whether Equable's claim was valid against Plaintiff.[30]  Amazingly,

Defendant, despite knowing that Defendant had sued Plaintiff and lost on this claim,

purposefully did not call the very attorneys for Equable who had litigated this claim,

nor did it call the court which had rendered judgment against Equable.[31]

Rather than conducting a reasonable reinvestigation, which would have

consisted of making two phone calls, Defendant merely went to its client, Equable,

and parroted what Equable told Defendant to say.[32]  In fact, Defendant admits that as

part of its reinvestigation procedure, it <u>never</u> contacts <u>any</u> entity or person provided

to it by a consumer in a dispute letter.  Instead, Defendant's reinvestigation consists

solely of contacting its client, the data furnisher, even where the consumer provides

specific information of agents of the data furnisher, like their attorneys, who have

---

[29]*See* Pl. Exhibit 2 (Initial Dispute Ltr), p. 1; Exhibit 7 (Second Dispute Ltr), p. 1.

[30]*See* Pl. Exhibit 5, (Iwanski Depo Tr.) at 98:10-99:7; 121:24-122:8.

[31]*Id.*

[32]See Pl. Exhibit 5, (Iwanski Depo Tr.) at 124:23-125:15.

detailed and indisputably evidence about the disputed claim.[33]  Here, in the face of all the information provided by Plaintiff, Defendant admits it <u>only</u> contacted Equable.[34]

Defendant takes the position that in order for them to do more than contact their client as part of its reinvestigation, the consumer must provide Defendant with "extra documents," as distinguished from specific and detailed information in the dispute letter.[35]  So, in this case, Defendant did not contact the attorneys for Equable or the Alabama court because Plaintiff did not provide any "extra documents" to Defendant.[36]  Yet, Defendant <u>never</u> told Plaintiff that he needed to provide an "extra document" for Defendant to do more than contact the very entity with which Plaintiff had a dispute.  Defendant <u>never</u> told Plaintiff that it was not going to contact the attorneys for Equable or the Alabama court if Plaintiff did not provide the "extra documents."  Moreover, Defendant <u>never</u> told Plaintiff what "extra documents" he needed to submit for Defendant to do more than call Equable as part of its reinvestigation.  In short, Defendant created its own rules for its reinvestigation "game," and expected Plaintiff to play by these rules while never communicating these rules to Plaintiff.  Once again, Defendant incredulously seeks to shift the blame

---

[33]*See* Pl. Exhibit 5, (Iwanski Depo Tr.) at 98:17-99:7; Pl. Exhibit 8, (Hughes Deo Tr.) at 16:7-16:18; 18:4-18:25.

[34]*See* Pl. Exhibit 5, (Iwanski Depo Tr.) at 99:7,

[35]*Id.*

[36]*Id.*

to Plaintiff for Defendant's failure to conduct a reasonable reinvestigation, when Defendant provided absolutely no notice to Plaintiff that Defendant would take no action other than contacting Equable absent receiving "extra documents."[37]

After receiving Mr. Collins' second dispute letter, Defendant merely sent an Automated Dispute Verification Form ("ACDV") to Equable.[38]  Defendant did not contact Equable's attorneys, the Alabama court, or any third-party with regard to the dispute and did not even reference its own records about the dispute, including that it had received Plaintiff's first dispute letter less than a month earlier.[39]   In fact, Defendant's policy is to <u>ignore</u> prior dispute letters regardless of whether the consumer is disputing the <u>same</u> <u>account</u> and the dispute letters are sent within a month of one another - unless the consumer somehow intuitively knows that Defendant <u>requires</u> him to tell Defendant that he has previously sent a letter regarding the <u>same</u> <u>account</u>.[40]   In the ACDV sent to Equable, Defendant admits telling Equable that Plaintiff claimed Equable sued Plaintiff in the Alabama court and lost.[41]   Yet, when Equable verified the debt, Defendant, knowing that Plaintiff had provided names and

---

[37]*See* Pl. Exhibit 5, (Iwanski Depo Tr.) at 99:1-99:4.

[38]*See* Pl. Exhibit 5, (Iwanski Depo Tr.) at 94:2-94:10.

[39]See Pl. Exhibit 5, (Iwanski Depo Tr.) at 99:23-104:15

[40]*See* Pl. Exhibit 5, (Iwanski Depo Tr.) at 104:16-106:23; Pl. Exhibit 8, (Hughes Depo Tr.) at 18:4-18:35; 26:8-26:17.

[41]*See* Pl. Exhibit 9, (ACDV) at p. 2.

numbers for Equable's attorneys and the Alabama court, did <u>nothing</u> to investigate whether the Equable debt was still valid.[42]   Defendant, however, admits that the FCRA does not require Plaintiff to produce "proof documents" to accompany a dispute letter for any reason, including to trigger Defendant's duty to conduct a reasonable reinvestigation.[43]

The September 9, 2010 report Defendant prepared as a result of Plaintiff's dispute of the Equable trade line stated only that the Equable account was "Reviewed" – it provided no other information about what steps, if any, Defendant performed as part of its reinvestigation.[44]   Near the bottom, the report states that a consumer can visit experian.com/status to check the status of a pending dispute.[45]   Plaintiff did not notice this inconspicuous line on the report.[46]   Moreover, Defendant admits that Plaintiff, even if he would have accessed the Experian website, could not have learned how Defendant's reinvestigation had affected, if at all, the Equable trade line because the website would have merely indicated that the trade line had been "updated."[47] After reading the September 9, 2010 report, Plaintiff did not understand how

---

[42]*See* Pl. Exhibit 5, (Iwanski Depo Tr.) at 94:2-98:6.

[43]*See* Pl. Exhibit 8, (Hughes Depo Tr.) 37:1-37-7.

[44]*See* Pl. Exhibit 10, (Experian's Response of September 9, 2010).

[45]*Id.*

[46]*See* Pl. Exhibit 4, (Collins Depo Tr.) at 88:11-89:7.

[47]*See* Pl. Exhibit 8, (Hughes Depo Tr.) 15:6-15:16.

-14-

Defendant's reinvestigation had affected, if at all, the Equabale trade line.[48]  Other than sending a dispute letter, Plaintiff does not know of any other means to dispute trade lines on his credit report.[49]  In fact, Defendant prepared additional reports containing the inaccurate information.[50]  Defendant admits it refused to delete the inaccurate Equable trade line on Plaintiff's credit report until after this lawsuit was filed and at the direction of defense counsel.[51]

Defendant's unlawful conduct has *inter alia* caused Plaintiff to suffer harm from a loss of sleep, strained familial relationships, disrupted and stressed employment conditions, headaches, loss of appetite, and mental fatigue.[52]  Plaintiff's wife of twenty years, Allison Collins, who assisted Plaintiff with his dispute with Defendant, has observed a change in Plaintiff's demeanor and behavior – seeing Plaintiff transform from being an upbeat person to being short tempered – and witnessed Plaintiff's suffering from an increase in his blood pressure – all due to

---

[48]*See* Pl. Exhibit 4, (Collins Depo Tr.) at 89:11-90:6.

[49]*See* Pl. Exhibit 4, (Collins Depo Tr.) at 75:9-75:14.

[50]*See* Pl. Exhibits 10, 15 (Credit Report of November 3, 2010) (page 5), and 16 (Credit Report of February 28, 2011) (page 7).

[51]*See* Pl. Exhibit 5, (Iwanski Depo Tr.) at 141:12-141:24.

[52]*See* Pl. Exhibit 4, (Collins Depo Tr.) at 42:13-43:1; Pl. Exhibit 11, (Plaintiff's Interrogatory Responses) at Nos. 12, 13; Pl. Exhibit 12, (Plaintiff's Amended Interrogatory Responses) at No. 12.

Defendant's unlawful conduct.[53] Mrs. Collins, a Licensed Practical Nurse, became so concerned about Plaintiff's health while he was dealing with Defendant about the Equable dispute that she advised him to seek medical attention.[54] Gabrielle Collins, Plaintiff's daughter who lives with her parents while attending college, has a very strong relationship with her father and has noticed that since the time Plaintiff has had to deal with Defendant over the Equable dispute, he has become easily irritated, more snappy and withdrawn.[55]

Defendant does not provide any evidence to show that Experian employees were properly trained or supervised and does not attempt to explain or challenge the damaging testimony of their own 30(b)(6) witness. Teresa Iwanski, a senior legal and compliance specialist for Defendant since 2006,[56] testified she never worked in compliance prior to working for Defendant.[57] Other than her current employment at Experian, Ms. Iwanski has never been trained in any type of compliance.[58] Moreover, despite the fact Ms. Iwanski is the Senior Legal and Compliance Specialist "handling

---

[53]*See* Pl. Exhibit 13, (A. Collins Depo Tr.) at 9:1-9:3; 9:4-9:8; 10:1-10:18.

[54]*See* Pl. Exhibit 13, (A. Collins Depo Tr.) at 14:16-14:19; 15:16-15:20.

[55]*See* Pl. Exhibit 14, (G. Collins Depo Tr.) at 11:13-15; 12:7-12:16; 16:14-17:1.

[56]*See* Pl. Exhibit 5, (Iwanski Depo Tr.) at 4:25-5:4.

[57]*See* Pl. Exhibit 5, (Iwanski Depo Tr.) at 7:1-9:11.

[58]*See* Pl. Exhibit 5, (Iwanski Depo Tr.) at 9:17-9:19.

consumer disputes," Ms. Iwanskie admits there was "no training" for her position.[59]

Defendant presented Ms. Iwanski as its representative to discuss the reinvestigation

of the Equable dispute,[60] but she admits that she has no knowledge of the FCRA.[61]

## V.  <u>ARGUMENT</u>

A.      <u>A Genuine Issue of Material Fact Exists as to Whether Defendant
        Conducted a Reasonable Reinvestigation of the Equable Dispute under
        Section 1681i.</u>

        Under § 1681i, Defendant had a duty to conduct a "reasonable investigation"

of the Equable dispute.  In particular, Defendant was required to (1) "review and

consider all relevant information submitted by consumer" and (2) do a substantive

inquiry into the merits of the consumer's dispute – requirements which prohibit

Defendant from merely parroting the information of its client or data furnisher (*i.e.*,

Equable).  *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997); *Sarver

v. Experian Info. Solutions*, 390 F.3d 969, 970-971 (7th Cir. 2004); *Henson v. CSC

Credit Services*, 29 F.3d 280, 287 (7th Cir. 1994).  "Generally, the determination of

reasonableness of reporting agencies' procedures is a factual question for the jury,

even when the underlying facts are undisputed. . . . thus, summary judgment can be

granted only if the defendant's procedures are unquestionably reasonable." *Jordan*

---

[59]*See* Pl. Exhibit 5, (Iwanski Depo Tr.) at 9:20-10:2.

[60]*See* Pl. Exhibit 5, (Iwanski Depo Tr.) at 4:16-4:22.

[61]*See* Pl. Exhibit 5, (Iwanski Depo Tr.) at 69:25-70:12.

*v. Equifax Information Services, LLC*, 410 F. Supp. 2d 1349, 1357 (N.D. Ga. 2006) *(*citing *Crabill  v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001)).  A credit reporting agency cannot simply rely on automated procedures (*e.g.*, Defendant's ACDV process) which make only superficial inquiries once the consumer has notified it that the information is disputed.  *Bradshaw v. BAC Home Loans Servicing, LP*, 816 F. Supp. 2d at 1074 (citing *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006)).  Defendant cites *Davis v. Equifax* for the proposition that summary judgment is appropriate when the reinvestigation is reasonable, however, there is absolutely no factual similarity between *Davis* and this case.[62]  The plaintiff in *Davis* wanted the credit reporting agency (i.e. Experian) to put certain trade lines **back in the credit report** with an updated status, but the credit reporting agency deleted the information disputed by the consumer because the furnisher did not reply back to the credit reporting agency's ACDV.  Indeed, if Defendant had taken the same course of action in the instant case, there would not have been a need to file this lawsuit.

In this case, more than a genuine issue of material fact exists whether Defendant's reinvestigation of the Equable dispute was reasonable – the undisputed facts show that Defendant's reinvestigation was unquestionably unreasonable.

---

[62] (Doc. 49) at Pages 13 and 14.

Overwhelming evidence shows that Defendant had a plethora of information at its fingertips to easily verify that Equable, the only entity Defendant contacted during its reinvestigation, was unreliable and providing Defendant grossly inaccurate information about the Equable dispute. In his dispute letters, Plaintiff repeatedly provided the information Defendant needed to efficiently conduct a reasonable reinvestigation and learn that Equable's claim was not valid. As the *Cushman* court instructed:

> The FCRA evinces Congress's intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear "grave responsibilities," 15 U.S.C. § 1681(a)(4), to ensure the accuracy of that information. The "grave responsibilit[y]" imposed by §1681i(a) **must consist of something more than merely parroting** information received from other sources. Therefore, a "reinvestigation" that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute.

*Cushman*, 115 F.3d at 225 (emphasis added).

The duty to conduct a reasonable investigation under § 1681i does not place a costly burden on Defendant.

> Once a claimed inaccuracy is pinpointed, a consumer reporting agency conducting further investigation incurs only the cost of reinvestigating that one piece of disputed information. In short, when one goes from the §1681e(b) investigation to the §1681i(a) reinvestigation, the likelihood that the cost-benefit analysis will shift in favor of the consumer increases markedly.

-19-

*Id.* at 225.

Defendant admits that it incurred almost no cost in its reinvestigation of the Equable dispute because it only took a single action in response to Plaintiff's two dispute letters, namely asking Equable about the debt and then accepting whole heartedly Equable's assertion that Plaintiff owed the debt. In other words, Defendant did **nothing** but accept at face value the very fact Plaintiff was vigorously disputing. Defendant adamantly refused to follow up on any of the information Plaintiff provided in his dispute letters, or to follow up on Plaintiff's requests that Defendant call Equable's attorneys, or the Alabama court. Instead, Defendant refused to incur any additional expense to investigate the Equable dispute unless Plaintiff provided "proof documents." Defendant, however, **never** told Plaintiff about this requirement and so never gave Plaintiff the opportunity to even trigger Defendant's unreasonable reinvestigation procedure. Nothing can be more unreasonable than to place extra-statutory burdens on a consumer to trigger a reinvestigation, and then never tell the consumer about these burdens. Defendant made up its own rules for the reinvestigation game, and wants to tell Plaintiff he lost the game because he did not follow the rules, when Defendant never communicated any of the rules to Plaintiff. Such conduct is not only unreasonable, it is unfair and absurd.

Defendant's witnesses verified the unreasonableness and absurdity of its reinvestigation procedures. They explained that Defendant's policy is **not** to consider any information provided in a dispute letter unless the consumer encloses "proof documents" in the dispute letter.[63] Defendant can cite to no statutory basis for its policy.[64] Indeed, the FCRA imposes no such requirement. For Defendant to pre-condition reinvestigation on a consumer's submission of "proof documents" is manifestly unreasonable.

For example, if Plaintiff would have copied and pasted into his dispute letter the substantive portions of the Alabama court's judgment order against Equable, then Defendant would not have taken any action in its reinvestigation other than contacting Equable and would not have deleted the Equable trade line from Plaintiff's credit report. If, however, Plaintiff would have enclosed a copy of the Alabama court's judgment order, then Defendant may have deleted the Equable trade line. In other words, if Plaintiff would have performed Defendant's work of conducting the reinvestigation – contacting the Alabama court and obtaining a copy of the judgment order at his expense – then Defendant would have deleted the Equable trade line. Instead, Defendant actually refused to conduct the reinvestigation (it had the same

---

[63]*See* Pl. Exhibit 5, (Iwanski Depo Tr.) at 98:17-99:7; Exhibit 8, (Hughes Depo Tr.) 18:4-18:25.

[64]*See* Pl. Exhibit 8, (Hughes Depo Tr.) 37:1-37:7.

information that Plaintiff had to obtain the judgment order) and refused to delete the Equable trade line.

Defendant's position is so unreasonable that it seeks to shift to Plaintiff the duty of reinvestigation that Congress squarely placed on Defendant.   Granting summary judgment to Defendant would effectively rewrite the FCRA to require Plaintiff to perform a thorough investigation, gather up all possible "proof documents," send them to Defendant, and hope that its "proof documents" are sufficient for Defendant to graciously delete the disputed trade line.   Such a result would be absurd and be diametrically opposed to Congress' intent in enacting the FCRA since it would harm, not help, consumers in dealing with credit reporting agencies.

B.       Defendant Recklessly Disregarded the Law in its Reinvestigation of the Equable Dispute.

The Eleventh Circuit has held a violation is "willful" for the purposes of the FCRA if the defendant violates the terms of the  Act with knowledge or **reckless disregard for the law**. *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1310 (11th Cir. 2009) *(*citing *Safeco Ins. Co. v. Burr*, 127 S. Ct. 2201, 2210 (2007)) (emphasis added).   Recklessness is measured by "an objective standard: action entailing an unjustifiably high risk of harm that is either known or **so obvious that it should be known**." *Safeco Ins. Co.*, 551 U.S. 47, 68 (2007) (emphasis added).  Also,

the Ninth Circuit has held that "as used in FCRA 'willfully' entails a 'conscious disregard' of the law, which means 'either knowing that policy [or action] to be in contravention of the rights possessed by consumers pursuant to the FCRA or **in reckless disregard** of whether the policy [or action] contravened those rights.'" *Reynolds v. Hartford Fin. Servs. Group, Inc.*, 435 F.3d 1081, 1098 (9th Cir.2006)(quoting *Cushman*, 115 F.3d at 227).

Defendant admits that it does no more than contact the data furnisher of the disputed claim when performing a reinvestigation even though the consumer (i.e. Plaintiff) provides information to Defendant showing that Defendant's source (i.e. Equable) may be unreliable. Defendant's reinvestigation policy is to ignore the contents of the dispute letter, send an ACDV to the source, its client, and then merely parrot the information from its client back to the consumer. Defendant will do nothing more when conducting a reinvestigation unless the consumer provides "proof documents" along with the dispute letter.[65] Defendant follows this reinvestigation procedure despite knowing that the FCRA places no burden on the consumer to provide "proof documents" before the credit agency has a duty to conduct a reinvestigation.[66] Defendant's policy, as shown in this case, is contrary to the FCRA

---

[65]*See* Pl. Exhibit 8, (Hughes Depo Tr.) 18:4-18:25.

[66]*See* Pl. Exhibit 8, (Hughes Depo Tr.) 37:1-37:7; 18:4-18:25.

and caused Defendant to recklessly disregard the FCRA in reinvestigating the Equable dispute.

C.        Plaintiff is Entitled to Statutory and Punitive Damages under Section 1681n

"Any person who willfully fails to comply with any requirement imposed [by FCRA] with respect to any consumer is liable to that consumer [for] . . . punitive damages."  15 U.S.C. §1681n(a)(1)(2).  Further, a consumer may be awarded statutory damages ranging from $100 to $1,000.  *Safeco Ins. Co.*, 551 U.S. at 53 (citing §1681n(a)).  "[R]eckless disregard of a requirement of FCRA would qualify as a **willful violation** within the meaning of § 1681n(a)."  *Id.* at 71 (emphasis added).

Defendant performed its reinvestigation of the Equable dispute without any regard for the FCRA.  Under *Safeco*, such actions in reckless disregard of the FCRA entitle Plaintiff to punitive damages, or at least raise a jury question based upon its determination of the reasonableness *vel non* of Defendant's reinvestigation.

D.        Plaintiff is Entitled to Recover His Actual Damages under Section 1681o

Section 1681o(a) governs negligent noncompliance under the FCRA and allows a consumer to recover actual damages in addition to attorney's fees.  *Levine v. World Financial Network Nat. Bank,* 437 F.3d 1118, 1123 (11th Cir. 2006).  "Actual damages under the FCRA may include damages for humiliation or mental distress, even if the consumer has suffered no out-of-pocket losses." *Jordan*, 410 F. Supp. 2d

-24-

at 1356 (citing *Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329,

1332-33 (9th Cir.1995) (permitting FCRA damages based solely on claims of

emotional distress)).

Another court within the Northern District, the Honorable Inge P. Johnson, has

has recently spoken on emotional distress damages as actual damages for purposes of

§1681o.

> The Eleventh Circuit has never precisely delineated the factors that a
> court should consider in determining whether the plaintiff's evidence of
> emotional distress is sufficient to support the jury's award of
> compensatory damages for emotional distress, particularly where, as
> here, the plaintiff's damages evidence consists chiefly of his own
> testimony.  However, other district courts in this Circuit have **clearly
> held that damages for mental distress are recoverable under the
> FCRA even if the plaintiff has suffered no out of pocket expenses**;
> *Moore v. Equifax Information Services, LLC,* 333 F. Supp. 2d 1360,
> 1365 (N.D. Ga. 2004); and the Eleventh Circuit has cited other Circuit
> cases for the proposition that "a claim for actual or compensatory
> damages under FCRA may include compensation for emotional distress
> in the absence of physical injury or out-of-pocket expenses."  *Levine v.
> World Financial Network Nat. Bank,* 437 F.3d 1118, 1125 (11th Cir.
> 2006) (citing *Bakker v. McKinnon,* 152 F.3d 1007, 1013 (8th Cir.1998)
> (holding that, even in the absence of "out-of-pocket expenses or costs
> incurred," the district court did not abuse its discretion in awarding
> actual and punitive damages when appellees testified " about how they
> felt when appellant obtained their credit reports and violated their
> privacy, thereby causing them some emotional distress")); *Philbin v.
> Trans Union Corp.,* 101 F.3d 957, 963 n. 3 (3d Cir. 1996) ("Given the
> amorphous nature of the damages at issue, we do not consider it
> necessary that [the plaintiff] state his damages with any greater degree
> of particularity."); *Casella v. Equifax Credit Info. Servs.,* 56 F.3d 469,
> 474 (2d Cir. 1995) ("[T]he District Court properly recognized that
> 'actual damages' may include humiliation and mental distress, even in

the absence of out-of-pocket expenses."). *See also King v. Asset Acceptance, LLC,* 452 F. Supp. 2d 1272, 1281 (N.D. Ga. 2006) ("**In FCRA cases, a plaintiff is notrequired to produce evidence of emotional distress beyond his own testimony**.") (citation omitted).

*Brim v. Midland Credit Management, Inc.*, 795 F. Supp. 2d 1255, 1260-61 (N.D. Ala. 2011) (emphasis added).

Here, Plaintiff has provided ample evidence of his emotional distress to not only preclude summary judgment but also permit recovery of actual damages under the FCRA.  Plaintiff has testified the Equable dispute with Defendant has caused him to suffer strain in his familial relationships, as corroborated by his wife, Allison Collins, and daughter, Gabrielle Collins.[67]  This Equable dispute has caused Plaintiff *inter alia* to suffer headaches, inability to eat, and loss of sleep.[68]  Plaintiff's wife of twenty years has observed her normally upbeat, loving husband become short tempered and even suffer increases in his blood pressure due to Defendant's actions during the Equable dispute.  Mrs. Collins, a Licensed Practical Nurse, even suggested Plaintiff seek medical attention.[69]

---

[67]*See* Pl. Exhibit 4, (Collins Depo Tr.) at 42:13-43:1; Pl. Exhibit 13, (A. Collins Depo Tr.) at 9:1-9:3; Pl. Exhibit 14, (G. Collins Depo Tr.) at 14:16-14:19; 15:16-15:20.

[68]*See* Pl. Exhibit 4, (Collins Depo Tr.) at 42:13-43:1; Pl. Exhibit 11, (Plaintiff's Interrogatory Responses) at Nos. 12, 13; Pl. Exhibit 12, (Plaintiff's Amended Interrogatory Responses) at No. 12.

[69]Pl. Exhibit 13, (A. Collins Depo Tr.) at 9:1-9:8; 14:16-14:19; 15:16-15:20.

Gabrielle Collins, Plaintiff's nineteen year-old daughter, who attends college, but lives at home with her parents, normally has a very strong relationship with Plaintiff, however, she has noticed her father becoming more easily irritated and snappy because of Defendant's actions.  Gabrielle directly relates her father's emotional distress to Plaintiff having to sue Defendant because it would not correct the Equable trade line even after he informed Defendant that he won the lawsuit Equable filed against him.[70]

E.    Defendant Acted with Reckless Disregard in Performing its Investigation of the Equable Dispute.

The case upon which Defendant relies, *Carter v. Treadway Trucking*, actually supports Plaintiff's claims.  As demonstrated herein, the "investigation" performed by Defendant of the Equable dispute was, without question, unreasonable.  As stated in *Carter*, "reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act  will likely result in injury." *Carter v. Treadway Trucking*, *Inc*., 611 So. 2d. 1034, 1035 (Ala. 1992).  This statement perfectly describes Defendant's conduct in investigating the Equable dispute.  Defendant's reinvestigation procedures, which require more than the FCRA requires, recklessly disregard the FCRA and Defendant must know, or should know, that these procedures will cause injury to the consumer (e.g., perpetuate inaccurate

---

[70]Pl. Exhibit 14, (G. Collins Depo Tr.) at 23:3-23:14; 25:11-26:3; 27:4-27:14; 28:19-29:6.

information in the consumer's file, lead to the consumer's denial of credit, cause the consumer to pay higher interest rates).  The undisputed facts and indeed Defendant's own admissions establish Defendant's reckless disregard of the FCRA and knowledge of the harm this conduct will cause.  Accordingly, Defendant is not entitled to summary judgment on this claim.

F.   <u>Defendant was Negligent in the Training and Supervision of its Employees.</u>

Defendant was negligent in the training and supervision of its employees. Teresa Iwanski, Defendant's designee to testify on the reinvestigation of the Equable dispute, admitted she was never even trained how to perform her duties as a "senior legal and compliance specialist."[71]  Further, she has no knowledge of the FCRA.[72] Knowledge of the FCRA is indispensable for a "legal and compliance specialist" tasked with making sure Defendant complies with the Act.  Defendant's blatantly unlawful conduct in this case is not surprising given Defendant's failure to properly train properly its employees on the FCRA and its requirements for a reinvestigation of a consumer dispute.  The complete absence of any training of Defendant's employees should lead the Court to deny Defendant's motion for summary judgment as to these claims.

---

[71]*See* Pl. Exhibit 5, (Iwanski Depo Tr.) at 4:16-4:22; 9:20-10:2.

[72]*See* Pl. Exhibit 5, (Iwanski Depo Tr.) at 69:25-70:12.

G.   Plaintiff's Section 1681i(a)(6) Claim is the Class Claim which is not Ripe for Resolution.

The Court, in its Amended Scheduling Order [Doc. 31] , has postponed any discovery or resolution of the class claims (Count VII) until the parties argued dispositive motions on Plaintiff's individual claims.  Defendant, however, attempts to circumvent the Court's Order and argue the class claims as a parting shot in its Motion for Summary Judgment.  Since Plaintiff has not been allowed to conduct discovery on the class claims Defendant's argument on them should be disregarded. Further, the evidence developed in discovery on Plaintiff's individual claims shows that Defendant's argument as to the class claims is unfounded.

The record clearly supports Plaintiff's assertion that he could not ascertain the outcome of the reinvestigation from the report Defendant provided to him.  The September 9, 2010 report merely states the account associated with his dispute was "Reviewed."[73] Defendant admits that no one could discern from looking at this report what, if anything, occurred in relation to the inaccurate information Plaintiff was disputing.[74]  Defendant's assertion that Plaintiff could have simply visited the website address, www.experian.com/status, shown on the report to learn the outcome is disingenuous at best.  Defendant admitted that even if Plaintiff, who does not use a

---

[73]*See* Pl. Exhibit 10, (Experian's Response of September 9, 2010).

[74]*See* Pl. Exhibit 8, (Hughes Depo Tr.) 15:6-15:16.

-29-

computer regularly, if at all,[75] went to Defendant's website all he would have seen **is no more than he saw on the paper report he did receive, that is, the account was merely "updated."[76]** Regardless, Plaintiff would not have learned the results of Defendant's reinvestigation even if he would have gone to the designated website. Section 1681i(a)(6) requires a consumer reporting agency to provide a consumer a consumer report showing the changes made to the consumer's file following a reinvestigation. *Nunnally v. Equifax Info. Servs., LLC*, 451 F.3d 768, 776 (11th Cir. 2006). On its face, the report Defendant issued to Plaintiff did not satisfy this requirement and violates § 1681i(a)(6). Therefore, although the Court has postponed any consideration of the § 1681i(a)(6) claim, even if the Court was to consider it, the record shows that Defendant is not entitle to summary judgment on this class claim.

## VI. <u>CONCLUSION</u>

Defendant's Motion for Summary Judgment is due to be denied in all respects except to Plaintiff's § 1681e(b) claims and his claims for defamation and invasion of privacy, which he no longer pursues. As to Plaintiff's § 1681i claims and his other state law claims, summary judgment is due to be denied. The § 1681i(a)(6) class claim is not properly before the Court at this time, but even if it was, Plaintiff has provided ample evidence showing summary judgment is due to be denied to it as well.

---

[75] *See* Pl. Exhibit 4, (Collins Depo Tr.) at 59:12-60:7.

[76] *See* Pl. Exhibit 8, (Hughes Depo Tr.) 15:6-15:16.

Respectfully submitted this 13th  day August,  2012.


                                        s/ David L. Selby II
                                        Attorney for Plaintiff
                                        David L. Selby II

OF COUNSEL:
BAILEY & GLASSER, LLP
One Chase Corporate Dr Ste 400
Birmingham , AL 35244-7001
Telephone: (205) 313-6490
Email: dselby@baileyglasser.com


                                        s/ Wesley L. Phillips
                                        Attorney for Plaintiff
                                        Wesley L. Phillips

OF COUNSEL:
PHILLIPS LAW GROUP, LLC
Post Office Box 130488
Telephone: (205) 383-3585
Facsimile: (800) 536-0385
Email: wlp@phillipslaw.com


## CERTIFICATE OF SERVICE

This is to certify that on this13th day of August, 2012, a copy of the

foregoing document has been served upon counsel for all parties electronically via

CM/ECF:


L. Jackson Young
FERGUSON FROST & DODSON, LLP
2500 Acton Road, Suite 200
Birmingham, Alabama 35243

Gregory Hanthorn
JONES DAY
1420 Peachtree Street,
N.E. Suite 800
Atlanta, Georgia 30309


                                           _s/David L. Selby II_____
                                           OF COUNSEL