FILED

2013 Sep-16  PM 04:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **CURTIS J. COLLINS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | Civil Action Number |
| | ) | **2:11-cv-938-AKK** |
| **EXPERIAN INFORMATION** | ) | |
| **SOLUTIONS, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Curtis J. Collins filed this lawsuit alleging that Experian Information Solutions, Inc. willfully, maliciously, recklessly, and negligently failed to maintain reasonable procedures to ensure the accuracy of his credit report, to conduct a reasonable reinvestigation of inaccurate information, and to provide a proper consumer disclosure, in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681e(b) and 1681i (Count II).[1]  Doc. 29 at ¶¶ 48-49, 56-64.  Collins also pleaded state law claims for defamation (Count III), invasion of privacy

---

[1]Collins filed this lawsuit in the Circuit Court of Jefferson County alleging also that Equable Ascent Financial, LLC ("Equable") violated the Fair Debt Collection Practices Act (Count I). Docs. 1 at 18-19; 29 at 9.  The Circuit Court granted Collins's motion to dismiss Equable on March 11, 2011, and Experian removed this lawsuit to this court the same day.  *Id*. at 1, 56-58.

(Count IV), negligent, reckless, wanton, malicious, and intentional conduct (Count V), and negligent hiring, supervision, and training (Count VI). *Id*. at ¶¶ 65-85. After Experian moved for summary judgment, doc. 49, Collins voluntarily withdrew the state law claims for defamation and invasion of privacy, and the FCRA claim for failure to maintain reasonable procedures pursuant to § 1681e. Doc. 53 at 8-9. Therefore, the only claims remaining are the FCRA claims for willful, malicious, reckless, and negligent failure to conduct a reasonable reinvestigation and to provide a proper consumer disclosure, in violation of § 1681i (Count II), state law claims for negligent, reckless, wanton, malicious, and intentional conduct (Count V) and negligent hiring, supervision, and training (Count VI), and the class claim for failure to provide a proper consumer disclosure under the FCRA (Count VII).

Experian has moved for summary judgment and its motion, as well as Collins's motion for leave to file a sur-reply, is fully briefed. Docs. 49, 53-55, 57, 58. The court agrees with Collins that "Experian cannot say it will be prejudiced by the Court allowing Plaintiff to file his Sur-Reply." Doc. 58 at 10. Therefore, since the supplemental briefing by both parties aided the court in addressing the summary judgment motion, the court **GRANTS** Collins's motion to file a sur-reply. Also, for the reasons stated below, the court **GRANTS** Experian's motion

for summary judgment.[2]

## I.  SUMMARY JUDGMENT STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of proving the absence of a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial."  *Id.* at 324 (citation and internal quotation marks omitted).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court must construe the

---

[2]Although Collins is correct that the court has not allowed discovery on the class claim alleged in Count VII for an alleged failure to provide a proper consumer disclosure, doc. 53 at 36, Collins also alleged an individual claim on that same basis in Count II, doc. 29 at ¶¶ 60 & 62, which Experian addressed in its summary judgment motion, doc. 49 at 20.  Based on the court's ruling granting summary judgment on Count II, certification of the class claim (Count VII) is **MOOT**.  *See Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333, 1343 (11th Cir. 2000).

evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party.  *Id*.  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (*per curiam*) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560,1563 (11th Cir. 1989)).

## II.  FACTUAL BACKGROUND

Collins defaulted on a GE Capital Corporation credit card.  Docs. 49-2 at 3-4; 49-3.  As a result, GE assigned the debt to Equable which sued Collins in Small Claims Court.  Doc. 49-3 at 3.  After a trial, that court ruled in favor of Collins.  *Id*. at 8.  Despite Collins's victory, Equable continued to report the debt to Experian.  *See* doc. 53-3 at 5.  Consequently, Collins wrote to Experian disputing the accuracy of his credit report:

> I don't owe any money to Equable Ascent Financial for account [ ] # 1237.  This account is wrong.  Delete it immediately.  Equable Ascent sued me for this debt in the small claims court of Jefferson County, Alabama, case # SM-10-2973, in my answer to the lawsuit I denied I owed any money on the account, judgment was entered for defendant, you can call the court for more information at 205-325-5331 or the attorneys for Equable Ascent at 205-250-8437.

Doc. 49-5 at 2.  Due to Collins's failure to reference the GE account number and the postal stamp's zip code not matching Collins's home address, Experian suspected fraud and notified Collins that it received a "suspicious request"

regarding his credit report.  Docs. 49-4 at 8-9; 49-2 at 18; 49-5 at 2-3; 49-6 at 2.

Experian also informed Collins to submit a proper dispute that included his full

name, social security number, current mailing address, date of birth, previous

addresses for the past two years, the account name and number in dispute, and the

specific reason for contesting the report.  Doc. 49-6 at 2.  Collins's response,

which included a copy of his driver's license and social security card, stated:

> I don't owe any money to Equable Ascent Financial for account [ ]
> #1237.  This account is wrong.  Delete it immediately.  Equable
> Ascent sued me for this debt in Jefferson [C]ounty Alabama and I
> won.  My case number is SM-10-2973.  Please delete and send me
> [an] updated credit report.

Doc. 49-7 at 2-3.

In light of Collins's response, Experian sent Equable an Automated

Consumer Dispute Verification form requesting that Equable verify the ownership,

accuracy, and status of the account.  Docs. 49-4 at 25; 49-8 at 2.  Despite the

judgment in Collins's favor, Equable nonetheless represented that Collins still

owed the debt.  Docs. 49-4 at 25; 49-8 at 2.  Based solely on Equable's response,

Experian wrote Collins stating that it had "Reviewed"[3] the Equable account

---

[3]The letter defined "Reviewed" to mean "This item was either updated or deleted."  Doc. 49-9 at 2.  "Deleted," in turn, is defined as "This item was removed from your credit report," and "updated" denotes "A change was made to this item; review this report to view the change.  If ownership of the item was disputed, then it was verified as belonging to you."  *Id*.

information and that Collins could access his credit report by visiting Experian's website or by requesting a copy in writing.  Doc. 49-9 at 2.  When Collins accessed his credit report online almost three months later, he discovered that Experian had not deleted the Equable account.[4]  Docs. 49-2 at 8; 49-10 at 2, 7; 53-5 at 55, 57.  Consequently, Collins filed this lawsuit.  Doc. 1 at 11.  A month later, at Equable's request, Experian removed the disputed entry.  Docs. 49-4 at 37; 53-5 at 58.

## III. ANALYSIS

Collins challenges Experian's reinvestigation procedures under the FCRA and state law.  Specifically, Collins contends that Experian violated § 1681i of the FCRA by willfully, recklessly, maliciously, and negligently failing (1) to conduct a reasonable reinvestigation of the inaccurate information contained in his credit report and (2) to provide a proper consumer disclosure.  Doc. 29 at 9, 11-12.  Next, Collins alleges that Experian violated Alabama state law by negligently, recklessly, wantonly, and maliciously complying with the reporting requirements, and negligently hiring, supervising, and/or training its employees and agents.  Doc. 29 at 14-16.  The court will start its analysis with the FCRA negligence

---

[4]Presumably, since the account was not "deleted," Experian "updated" Collins's account.  *See supra*, n.4.

claims, followed by the FCRA willful, reckless, and malicious claims, and, finally, the state law claims.

## A.  FCRA - Alleged unreasonable reinvestigation and improper disclosure claim

The FCRA ensures that credit reporting agencies ("CRA"), such as Experian, use reasonable procedures for collecting, maintaining, and using consumer information.  *See* 15 U.S.C. § 1681(b).  If a consumer disputes information on a credit report, the FCRA requires CRAs to conduct a "reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file."  *Id*. at § 1681i(a)(1)(A); *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991) ("a [CRA] retains a duty under [the] FCRA to make reasonable efforts to investigate and correct inaccurate or incomplete information brought to its attention by the consumer.").  To do so, a CRA must "review and consider all relevant information submitted by the consumer" and "provide notification of the dispute to any person who provided an item of information in dispute."  §§ 1681i(a)(2)(A) and (a)(4).  Upon completion of the reinvestigation, the CRA is required to notify the consumer of the results with a description of the procedure it used to verify the information and an updated report, and to inform the consumer of the right to file a statement disputing the accuracy or

completeness of the information.  § 1681i(a)(6).

1.    <u>Negligent reinvestigation claim</u>

Collins contends that Experian violated the reinvestigation requirements by failing to fully investigate his claim.  Doc. 49-9 at 2.  "In a reinvestigation of the accuracy of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers."  *Stevenson v. TRW, Inc.*, 987 F.2d 288, 293 (5th Cir. 1993) (citing *Swoager v. Credit Bureau of Greater St. Petersburg, Fla.*, 608 F. Supp. 972, 976 (M.D. Fla. 1985).  Stated differently, "[t]he 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources."[5] *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).  In that regard, a § 1681i(a) negligent reinvestigation claim is "properly raised when a particular credit report contains a *factual* deficiency or error that could have been remedied by uncovering additional facts that provide a more accurate representation about a particular entry."  *Cahlin*, 936 F.2d at 1160 (emphasis in original).

The facts here establish that Collins notified Experian that his credit report

---

[5]Section 1681(a)(4) states that "[t]here is a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."

inaccurately reflected the Equable debt and that Collins provided Experian the information it requested, including the reason Collins contested the debt, contact information for Equable's attorneys, and the court case number.  Docs. 49-5 at 2; 49-7 at 2-3.  Therefore, the critical inquiry is whether Experian *could have* uncovered additional facts and cured the inaccuracy if it had contacted the state court or Equable's attorneys as Collins suggested.  *See Cahlin*, 936 F.2d at 1160. To no surprise, Experian answers this question in the negative and offers two reasons in support of its contention.  First, Experian asserts that contacting the state court would have resulted in a fruitless exercise because the state court documents refer only to the GE account number.  Docs. 49-2 at 5; 49-3 at 3.  The court disagrees because, armed solely with the court docket number, Experian could have efficiently targeted its resources to obtain a copy of the judgment and easily discovered that the judgment absolved Collins of the Equable debt.  *See Henson v. CSC Credit Serv.*, 29 F.3d 280, 286-87 (7th Cir. 1994) ("When a [CRA] receives [notice that the consumer disputes information contained in his credit report], it can target its resources in a more efficient manner and conduct a more thorough investigation.").  Significantly, although the state court documents list only the GE account number, Experian still could have uncovered the inaccuracy because the court complaint stated that GE assigned the debt to Equable, which is,

of course, consistent with the disputed information on Collins's Experian credit report.  Docs. 49-3 at 2-4; 53-3 at 5.  Alternatively, Experian could have called Equable's counsel to verify the accuracy of Collins's contentions.

Second, Experian attempts to shift the blame to Collins by contending that Collins adversely impacted the reinvestigation by failing to attach the small claims court documents to his submission.  Doc. 49 at 18.  The court is confounded by this contention since it undermines Experian's earlier assertion that it could not have uncovered the inaccuracy simply by obtaining the state court documents. Experian cannot fault Collins for failing to provide records that Experian simultaneously contends would not have aided its investigation.  In any event, the court refuses to embrace such a restrictive reading of the FCRA that would allow a CRA to circumvent its duty and obligation to conduct a reasonable reinvestigation and shift that burden instead to the consumer.  *Cushman*, 115 F.3d at 225 ("[A] 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute.").

Contrary to Experian's contentions, there are sufficient facts here for a jury to find, if it is so inclined, that Experian failed to investigate Collins's contention with the same tenacity it used to question the accuracy of Collins's original inquiry.  *See Cushman*, 115 F.3d at 225.  Therefore, based on the evidence before

this court, the court finds that an issue of fact exists regarding whether Experian

negligently failed to conduct a reasonable investigation when it decided to

completely disregard the small claims court information Collins provided and to

rely solely instead on Equable to verify the debt.[6]  *See Pinner*, 805 F.2d at 1262

(contacting only the creditor was insufficient to fulfill the duties under § 1681i(a)).

Accordingly, Experian's motion on this basis fails.

### a.  Actual Damages under § 1681i(a)

Finding that a factual issue exists regarding whether Experian negligently

reinvestigated Collins's claim is simply the first step in the analysis of the FCRA

negligence claim.  The court must next consider whether Collins has shown that he

sustained "actual damages," as that term is used under the FCRA, because

"[d]amages are an element of the [negligence] claim, and without evidence of

damages, summary judgment is appropriate."  *King v. Asset Acceptance, LLC*, 452

F. Supp. 2d 1272, 1280 (N.D. Ga. 2006).

Under § 1681*o*, a CRA that is "negligent in failing to comply with any

[FCRA] requirement [ ] is liable to th[e] consumer" for "any actual damages

---

[6]Experian's reliance on *Davis v. Equifax Info. Sys.*, 346 F. Supp. 2d 1164, 1175 (N.D. Ala. 2004), is unavailing.  The *Davis* court determined that a CRA conducted a reasonable reinvestigation when it responded to the plaintiff's disputes by contacting the information source and creditor and deleting disputed items when the creditors failed to respond.  *Id.* at 1175.  Here, Experian failed to delete the Equable account from Collins's credit report.

sustained by the consumer as a result of the failure."  Consistent with this provision, courts have allowed negligence claims to proceed only when the plaintiff presented some evidence of an actual injury:  "We need not reach the substance of [the plaintiff's] FCRA claims . . . because we find that he has utterly failed to produce any evidence tending to show that he was damaged as a result of an allegedly inaccurate [ ] credit report."[7]  *Cahlin*, 936 F.2d at 1160-61.  This principle is summarized succinctly by the Fifth Circuit, which in *Hyde v. Hibernia Nat'l Bank*, stated

> [The FCRA] does not authorize a suit simply to require the [CRA] to correct an erroneous credit report.  Instead, it permits any consumer who is *injured* by the negligent failure of a reporting agency to comply with any requirement imposed by the Act to sue for the actual damages sustained by the consumer as a result of the failure, together with the cost of the action and reasonable attorney's fees.
>
> * * * *
>
> A consumer may learn that a credit agency possesses erroneous information in its files, but he has *no cause of action* in tort against the credit agency *until the agency somehow injures him.*  The statute does not allow suit against the credit agency for creating, possessing, or revealing to a consumer credit files containing erroneous information, but establishes a cause of action to redress specific injuries sustained by the consumer.

---

[7]Collins asserts that the *Cahlin* court never intended for this statement to apply to § 1681i claims:  "This statement by the Eleventh Circuit is referring to a lack of **damages** and **not** the requirements of a 1681i claim," and that "there is no requirement of third party publication in *Cahlin* for a § 1681i claim."  Doc. 58 at 2, 5 (emphasis in original).  Unfortunately for Collins, the court made the statement in its analysis of both the §§ 1681e(b) and 1681i(a) claims.  *Cahlin*, 936 F.2d at 1156, 1160-61.  In other words, the actual opinion issued by the court does not comport with Collins's interpretation of the case.

*Hyde v. Hibernia Nat'l Bank*, 861 F.2d 446, 448, 449 (5th Cir. 1988) (emphasis

added).[8]   *See also Crabill v. Trans Union, LLC*, 259 F.3d 662, 664 (7th Cir. 2001)

("Without a causal relation between the violation of the statute and the loss of

credit, or some other harm, a plaintiff cannot obtain an award of 'actual

damages.'"); *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 473 (2d Cir.

1995) ("For any [FCRA] violation, the [CRA] is liable to the consumer for 'actual

damages' sustained."); *Hauser v. Equifax, Inc.*, 602 F.2d 811, 818 (8th Cir. 1979)

(affirming a directed verdict in a § 1681i(a) reinvestigation case because "[w]hile

negligence may be inferred from Equifax's lack of cross-referencing its filing

system, again there is no evidence of damage to [the plaintiff] as a result of the

failure to delete the inaccuracy in the Income Inspection Report.").  Therefore, to

sustain a § 1681i(a) action, a plaintiff must produce "evidence tending to show

that he was damaged as a result of an allegedly inaccurate [ ] credit report."

*Cahlin*, 936 F.2d at 1160-61.

  With this background in mind, the court turns now to Collins's specific

contentions.  Because Collins admits that he does not have "any evidence or

---

[8]The court stated further that "statutes of limitations do 'not usually begin to run until the tort is complete.'  Actual loss or damage to the interest of another is, at least, a component of the cause of action based on negligence, and, in the absence of some other measure of damages, of intentional wrongs as well.  Proof of damage is thus an essential part of the plaintiff's case." *Hyde*, 861 F.2d at 448 (emphasis added).

information that a credit report from Experian with the incorrect Equable

information was provided to any creditor, employer or insurer," doc. 53-4 at 12;

*see also* doc. 53 at 9, his claim is confined purely to emotional distress damages,

doc. 53-12 at 5-6.  Consequently, the issue before the court is whether a plaintiff's

"emotional distress" qualifies as "actual damages sustained by the consumer . . ."

under § 1681*o* even when the CRA never published the erroneous credit report.

For the reasons stated below – specifically, Collins's failure to attribute any

conduct to Experian beyond failing to conduct a proper reinvestigation and timely

removing the Equable entry – the court finds that it does not.

    As evidence of emotional distress, Collins testified that he "work[ed] hard

to try to keep things off [his] mind" and suffered from nausea, embarrassment,

humiliation, frustration, stress, headaches, worry, nervousness, anxiousness, loss

of sleep and appetite due to Experian's conduct.  Docs. 53-4 at 12; 53-12 at 5-6.

In further support of his claim, Collins's daughter testified that she had difficulty

talking to Collins because he was "very irritable [and snappy] at times."  Doc. 53-

14 at 5-6.  In addition, Collins's wife, a licensed practical nurse, testified that she

noticed that Collins was quieter, "not sleeping well," "a little short tempered," had

"a little sadness," an elevated blood pressure, and added that Collins rejected her

recommendation to seek medical treatment.  Doc. 53-13 at 5, 6.  Collins contends

that this evidence of emotional distress is sufficient to meet his burden because "[a]ctual damages under the FCRA may include damages for humiliation or mental distress, even if the consumer has suffered no out-of-pocket losses."  Doc. 53 at 31 (*quoting Jordan v. Equifax Info. Servs., LLC*, 410 F. Supp. 2d 1349, 1356 (N.D. Ga. 2006) (citations omitted)).  While Collins is correct that actual damages may include emotional distress, *see Fischl v. Gen. Motors Acceptance Corp.*, 708 F.2d 143, 151 (5th Cir. 1983); *Pinner*, 805 F.2d at 1265, this contention fails to fully address the issue before this court, i.e. whether actual damages may consist solely of emotional distress damages in situations where, as here, there is no disclosure of the erroneous credit report by the CRA to third parties.

Based on the court's review of case law, courts have allowed purely emotional distress claims primarily in situations where the emotional distress resulted from the CRA's disclosure of the erroneous information to third parties. For example, in *Stevenson v. TRW, Inc.*, the Fifth Circuit affirmed the district court's award of emotional distress damages where the plaintiff had "lengthy dealings" with the CRA, was denied credit three times during the reinvestigation, and had to explain his credit history to a bank officer to open a new account. *Stevenson*, 987 F.2d at 297.  In contrast, courts have reached a different result when the plaintiff presented no evidence of a disclosure to a third party.  As the

Second Circuit aptly explained when it faced this issue:

> [The plaintiff] presented no evidence that during the period in which
> Equifax and Trans Union carried the inaccurate [ ] entry, either of
> them provided [the plaintiff's] credit report to any third party.  No
> rational trier of fact could infer from this record that any potential
> creditor or other person in [the plaintiff's] community learned of any
> harmful information from [the CRAs].  [The plaintiff's] argument
> boils down to the bare contention that he is entitled to damages for
> pain and suffering simply because he knew of an inaccurate and
> potentially damaging item in his credit report. We are unaware of any
> case extending FCRA damages that far, [ ] and we decline to reach
> that result here. . . . [W]e do not believe a plaintiff can recover for
> pain and suffering when he has failed to show that any creditor or
> other person ever learned of the derogatory information from a
> [CRA].

*Casella*, 56 F.3d at 475 (citations omitted).  *See also Cousin v. Trans Union Corp*.,

246 F.3d 359, 370 (5th Cir. 2001) ("In light of the fact that the *credit denial*

occurred due to an Equifax report, [the plaintiff's] emotional distress from the

denial of credit cannot be attributed to Trans Union, and he cannot recover actual

damages for that distress.") (emphasis added); *Thomas v. Gulf Coast Credit Servs.,*

*Inc.*, 214 F. Supp. 2d 1228, 1237 (M.D. Ala. 2002) ("The emphasis, then, [under §

1681i(a)] is placed upon minimizing the risk that a consumer suffer prejudice due

to arguably inaccurate information.  Absent indication that Experian . . . forwarded

*any* information about Plaintiff, it stands to reason that Plaintiff cannot assert a

claim for damages against said Defendant[ ].") (emphasis in original); *but see*

*Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (as

related to a claim under § 1681e(b), finding that "no case has held that a denial of credit is a prerequisite to recovery under the FCRA" and that "a failure to comply with § 1681e(b) is actionable even absent a denial of credit.").[9]  In short, the majority of courts have consistently required a plaintiff to prove actual harm resulting from the CRA's disclosure of the erroneous report to a third party in order to recover damages for emotional distress.

Based on the record before the court, the court finds that Collins cannot establish the actual harm necessary to recover emotional distress damages.  Again, Collins concedes that he has no proof that Experian published his credit report to third parties.  Doc. 53 at 8-9.  In other words, the only persons that knew about the inaccurate entry are those whom Collins told.  The court has found no case, and Collins does not cite to any, allowing a claim for emotional distress based solely on a plaintiff's voluntary disclosure of an inaccurate report to his family or friends or based on a general concern regarding a potential disclosure.  In fact, even the cases Collins cites for the proposition that a plaintiff's testimony alone is sufficient to establish emotional distress damages involved the CRA's disclosure of erroneous entries to third parties and a denial of credit.  *See King*, 452 F. Supp.

---

[9]*Guimond* is of no help to Collins since he abandoned his § 1681e claim.  Doc. 53 at 8. Moreover, since the plaintiff in *Guimond* was denied credit, unlike Collins's case, the CRA in *Guimond* in fact disclosed the false information in the credit report.

2d at 1277 (denied credit card); *Brim v. Midland Credit Mgmt., Inc.*, 795 F. Supp. 2d 1255, 1259 (N.D. Ala. 2011) (denied mortgage).  The court simply does not believe that Collins's decision to disclose the erroneous entry to his family qualifies as "other person[s] in [Collins's] community learn[ing] of any harmful information from [Experian]."  *Casella*, 56 F.3d at 475.  Significantly, the court doubts that Collins can establish that his own decision to disclose the erroneous information placed him in any negative light with his family since, presumably, his family knew about the erroneous nature of the entry.  However, even if the disclosure placed Collins in a negative light with his family – a fact Collins never argued, Collins failed to show that his family's knowledge resulted from Experian "forward[ing] any information about [Collins]," *Thomas*, 214 F. Supp. 2d at 1237, as opposed to his own decision to disclose the information.

Ultimately, based on this record, Collins is no different than the plaintiff in *Casella* who sued simply because his credit report contained inaccurate information.  *Casella*, 56 F.3d at 472.  Courts are clear that to sustain a claim, a plaintiff must do more than show an erroneous entry:  "A consumer may learn that a credit agency possesses erroneous information in its files, but he has *no cause of action* in tort against the credit agency *until the agency somehow injures him.*" *Hyde*, 861 F.2d at 449 (emphasis added).  Based on Collins's failure to show any

conduct by Experian beyond simply maintaining an erroneous entry due to

Experian's failure to properly conduct a reinvestigation, the court joins the *Casella*

court in finding that Collins's "argument boils down to damages for pain and

suffering simply because *he knew* of an inaccurate and potentially damaging item

in his credit report.  We are unaware of any case extending FCRA damages that

far, [ ] and we decline to reach that result here. . . .  [W]e do not believe a plaintiff

can recover for pain and suffering when he has failed to show that any creditor or

other person ever learned of the derogatory information *from* a credit reporting

agency."[10]  *Casella*, 56 F.3d at 475 (citations omitted) (emphasis added).  In short,

in light of Collins's failure to establish any disclosure of his credit report by

Experian to third parties, his emotional distress alone is insufficient to sustain his

FCRA negligent reinvestigation claim.  Accordingly, the motion for summary

judgment on the FCRA negligent reinvestigation claim is **GRANTED**.

    2.  Negligent consumer disclosure claim

    Collins contends also that Experian negligently violated § 1681i of the

FCRA by providing him investigation results that did not include the actual

---

[10]Again, Collins relies on *King*, 452 F. Supp. 2d at 1281, and *Brim*, 795 F. Supp. 2d at
1259, for the proposition that his testimony alone sufficiently establishes his emotional distress
damages.  However, *King* and *Brim* are not inconsistent with *Casella* and are distinguishable
from the facts here because the plaintiffs in both cases suffered humiliation before a third party
when they were denied credit based on an inaccurate credit report published by the defendants.
*King*, 452 F. Supp. 2d at 1276, 1281; *Brim*, 795 F. Supp. 2d at 1259.

reinvestigation outcome and were difficult to understand.  Docs. 29 at 9, 11-12; 49-2 at 24.  Again, after its investigation, Experian wrote Collins to relay that it "Reviewed" the item Collins disputed and directed Collins to "review this report to learn its outcome."  Doc. 49-9 at 2.  The FCRA requires a CRA to "provide written notice to a consumer of the results of the reinvestigation" that includes, among other things, a statement that the reinvestigation is complete, and a "consumer report that is based upon the consumer's file as that file is revised as a result of the reinvestigation."  § 1681i(a)(6)(A) and (B)(i) - (ii).  A consumer report under the FCRA is "any written, oral, or other communication of any information by a [CRA] bearing on a consumer's credit worthiness, credit standing, [or] credit capacity" and excludes "any . . . report containing information solely as to transactions or experiences between the consumer and the person making the report."  § 1681a(d)(1) and (2)(i).  Significantly, the "consumer report must be something more than the notice of the results of the investigation, otherwise subparagraph (B) would be redundant."  *Nunnally v. Equifax Info. Servs., LLC*, 451 F.3d 768, 776 (11th Cir. 2006) (citation omitted).  Moreover, the report must include "the changes [the CRA has] made [to the credit report] . . . as a result of the reinvestigation."  *Id*.

Based on the record before the court, an issue of fact exists as to whether

Experian satisfied the consumer report requirement.  Although Experian met the notice requirement by informing Collins that it "completed investigating any items [Collins] disputed with the source of the information," the notice failed to inform Collins of the specific investigation result and instead required Collins to view the revised credit report online in order to ascertain the outcome of Experian's review or investigation.  Doc. 49-9 at 2.  Since the law requires that the "consumer report must be something more than the notice of the results of the investigation," *see Nunnally*, 451 F.3d at 776, a factual dispute exists regarding whether Experian's actions are sufficient to satisfy the "consumer report" requirement.

However, despite the factual dispute, the court must nonetheless **GRANT** summary judgment on this claim for the same reasons outlined in section 1.a., *supra*, with respect to the reinvestigation claim, i.e. Collins cannot demonstrate that Experian's alleged failure to comply with the "consumer report" requirement caused him any harm.  *See Carvalho v. Equifax Info. Servs., LLC*, 588 F. Supp. 2d 1089, 1100 (N.D. Cal. 2008) (citing *Jianqing Wu v. Trans Union*, 2006 WL 4729755, *11 (D. Md. May 2, 2006) ("Because Plaintiff cannot demonstrate that Equifax's failure to disclose its reinvestigation caused him to sustain actual injuries, this Court concludes that Plaintiff cannot prevail in his suit for negligent non-compliance with 15 U.S.C. § 1681i(a)(7)."); *Kuehling v. Trans Union, LLC*,

137 F. App'x 904, 909 (7th Cir. 2005) (in a claim based, in part, on the mailing of the reinvestigation report to the wrong address, the court found that "[a] suit for actual damages under the FCRA  [§ 1681i(a)(6)(A)] requires a showing that the plaintiff suffered harm. . . . [The plaintiff] has not produced evidence of a loss of credit or some other harm casually linked to the mailing mistake.") (citation omitted).

     3.  <u>Willful, reckless, and malicious violation claims</u>

     Collins contends also that Experian willfully, recklessly, and maliciously violated the FCRA.  Doc. 29 at 12.  Under § 1681n, a CRA that "willfully fails to comply with any requirement" of the FCRA is liable for "any actual damages sustained by the consumer as a result of the failure *or* damages of not less than $100 and not more than $1,000."  15 U.S.C. § 1681n (a)(1)(A) (emphasis added). In other words, unlike his negligence claims, since Collins can recover statutory damages, he does not have to show actual damages to prevail on his willful violation claim, or reckless violation claim, for that matter, since a "reckless disregard of a requirement of FCRA would qualify as a willful violation within the meaning of § 1681n(a)."  *Safeco Ins. Co. of Amer. v. Burr*, 551 U.S. 47, 71 (2007). However, a failure to show willful, reckless, or malicious conduct not only impacts the FCRA claims, but also the state law negligence claims since they are

preempted by the FCRA absent a showing of "malice or willful intent to injure."

15 U.S.C. § 1681h(e);[11] *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631,

638 (5th Cir. 2002); *Lofton-Taylor v. Verizon Wireless*, 262 F. App'x 999, 1002

(11th Cir. 2008); *Short v. Allstate Credit Bureau*, 370 F. Supp. 2d 1173, 1185

(M.D. Ala. 2005).

To establish willful noncompliance, the plaintiff must show that the CRA

knowingly and intentionally committed an act known to violate the FCRA. *See*

*Phillips v. Grendahl*, 312 F.3d 357, 370 (8th Cir. 2002); *Pinner*, 805 F.2d at 1263.

Similarly, an individual acts in

> reckless disregard of the safety of another if he does an act or
> intentionally fails to do an act which it is his duty to the other to do,
> knowing or having reason to know of facts which would lead a
> reasonable man to realize, not only that his conduct creates an
> unreasonable risk of physical harm to another, but also that such risk
> is substantially greater than that which is necessary to make his
> conduct negligent.

2 Restatement (Second) of Torts § 500, p. 587 (1963-1964). "Thus, a company

subject to FCRA does not act in reckless disregard of it unless the action is not

only a violation under a reasonable reading of the statute's terms, but shows that

---

[11]Section 1681h(e) provides that "[e]xcept as provided in sections 1681n [civil liability for willful noncompliance] and 1681*o* [civil liability for negligent noncompliance] of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency . . . except as to false information furnished with *malice or willful* intent to injure such consumer." (emphasis added).

the company ran a risk of violating the law *substantially greater* than the risk associated with a reading that was merely careless." *Safeco Ins.*, 551 U.S. at 69 (emphasis added).  As for malice, Alabama law defines it as the "intentional doing of a wrongful act without just cause or excuse, either:  (a) With an intent to injure the person or property of another person or entity, or (b) Under such circumstances that the law will imply an evil intent."  Ala. Code § 6-11-20(b)(2) (1975).

### a.      Reinvestigation procedures

Collins contends that a reinvestigation procedure that ignores the contents of the consumer's dispute and instead consists solely of contacting the reporting source is tantamount to willful, reckless, and malicious conduct.  Docs. 29 at 12; *see* 53-8 at 6, 11.  The facts here do not establish that Experian's negligent failure to conduct a reasonable reinvestigation also "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless," that Experian's actions demonstrated an intent to injure, or that its conduct created an unreasonable risk of harm or established that it knowingly and intentionally committed an act known to violate the FCRA.  *Safeco, Inc.*, 551 U.S. at 69; *Pinner*, 805 F.2d at 1263; Ala. Code § 6-11-20(b)(2) (1975).  To the contrary, the undisputed facts show that Experian responded to Collins's inquiries, investigated the disputed account (albeit by only contacting Equable), informed

Collins that it "Reviewed" the disputed account, and instructed Collins on

obtaining his updated credit report.  Docs. 49-4 at 25; 49-5 at 2; 49-8 at 2; 49-9 at

2.  These are all actions the statute requires and, as such, negate a finding that

Experian's conduct was willful, reckless, or malicious.  Ultimately, while it may

have acted negligently by relying exclusively on Equable's report, Experian's

actions were, at worst, consistent with a careless reading of the FCRA.  As one

court faced with similar contentions put it:

> While [the defendant] may have been negligent in its investigation of
> [the plaintiff's] claim of fraud, [the plaintiff] has not produced any
> evidence suggesting that [the defendant] acted with a "conscious
> disregard" of [the plaintiff's] rights under the FCRA.
>
> * * * *
>
> The fact that [the defendant] concluded that the account was [the
> plaintiff's] and continued to report the account to the [CRAs] does
> not evidence a willful violation of [the plaintiff's] FCRA rights: [the
> defendant] did not refuse to investigate, withhold information, or
> report knowingly inaccurate information.

*King*, 452 F. Supp. 2d at 1280.  For these reasons, Experian's motion on the

willful, reckless, and malicious violations of the FCRA's reinvestigation

requirements is also **GRANTED**.

### b.  Consumer disclosure violation

Likewise, Collins also failed to establish a willful, reckless, or malicious

violation of the disclosure requirements.  Again, the court finds that Experian

satisfied the notice requirement by informing Collins that it investigated and

"Reviewed" the Equable item.  Doc. 49-9 at 2.  As to the consumer report

requirement, the record before this court fails to demonstrate that Experian

knowingly or intentionally harmed Collins or disregarded its duty under the

FCRA.  While Collins established that Experian failed to provide sufficient

information regarding his dispute and, but for the damages requirement, would

have survived summary judgment on the negligence claim, the facts here fall short

of establishing willful, reckless, or malicious violations.  To the contrary, the

investigation report informed Collins that Experian had "Reviewed" the Equable

account and that he could "view a full copy of [his] corrected credit report" online

or "receive a copy by mail."  *Id*.  Based on these facts, the court finds that Collins

failed to establish that Experian knowingly or intentionally disregarded its duty

under the FCRA, or exhibited an intent to injure Collins, as it relates to the

consumer disclosure requirement.  Therefore, Experian's motion on the willful,

reckless, and malicious violations of the FCRA's consumer disclosure

requirements is also **GRANTED**.

B.    *State law claims*

       In addition to the FCRA claims, Collins also asserts state law claims for

negligent, reckless, wanton, and malicious conduct (Count V)[12] and negligent

hiring, supervision, and training (Count VI).

### 1.    Negligence claims

In light of the court's ruling that Collins failed to establish willful or

malicious conduct, Collins's state law negligence claims (Counts V and VI) also

fail.  These claims are preempted by the FCRA when, as here, a plaintiff failed to

show "malice or willful intent to injure."  15 U.S.C § 1681h(e).  Accordingly,

summary judgment is also **GRANTED** on Counts V (negligence only) and VI.

### 2.  Alleged wanton conduct

Finally, Collins contends also in Count V that Experian acted wantonly by

"refus[ing] to comply with all the duties it had or owed to Plaintiff."  Doc. 29 at

15.  Wantonness is "conduct which is carried on with reckless or conscious

disregard of the rights or safety of others."  *Evans v. Walter Indus., Inc.*, 579 F.

Supp. 2d 1349, 1371 (N.D. Ala. 2008); Ala. Code § 6-11-20(b)(3) (1975).

---

[12]The court declines to address Collin's claim for  "intentional conduct (Count V)," doc. 29 at 14, because the case law only recognizes it as a categorization for intentional torts rather than a separate tort.  *See Tapscott v. Allstate, Inc. Co.*, 526 So. 2d 570, 572 (Ala. 1988) ("We conclude that because there was no dispute over the fact that this case involved only claims for intentional conduct [malicious and unlawful detainment, arrest, and imprisonment by force and intentional infliction of emotion distress], summary judgment was appropriate.").  As stated earlier, Collins voluntarily withdrew his intentional tort claims for defamation and invasion of privacy, doc. 53 at 8, and the court granted summary judgment on his claims for willful, reckless, and malicious conduct in section A.3., *supra*.

Specifically, it is

> the conscious doing of some act or the omission of some duty which
> under knowledge of existing conditions and while conscious that,
> from the doing of such act or the omission of such duty, injury will
> likely or probably result, and before a party can be said to be guilty of
> wanton conduct it must be shown that with reckless indifference to
> the consequences he consciously and intentionally did some wrongful
> act or omitted some known duty which produced the result.

*Roberts v. Brown*, 384 So. 2d 1047, 1048 (Ala. 1980) (citations omitted).

Critically, "the most crucial element of wantonness is knowledge." *Id*. (citation

omitted). Based on the record before the court, Collins failed to establish that

Experian acted "while conscious . . . that injury will likely or probably result." *Id*.

Instead, the facts establish that Experian responded promptly to Collins's dispute,

investigated the disputed entry, notified Collins of the investigation results, and

provided Collins access to the complete credit report. The failure to contact the

state court or Equable's lawyers or to provide specific reinvestigation results does

not demonstrate that Experian knew that the decision would result in injury to

Collins. Therefore, Experian's motion on the wantonness claim is also

**GRANTED**.[13]

_____

[13]Count V also alleges that Experian acted recklessly and maliciously. However, "efforts [ ] made to distinguish" the terms willful, reckless, and wanton "have consistently been ignored, and the three terms have been treated as meaning the same thing, or at least as coming out at the same legal exit." *See Safeco*, 551 U.S. at 57 (citation omitted). Therefore, to the extent Collins asserts a separate claim for reckless and malicious conduct, summary judgment is due for the same reasons as the wanton claim. *See also supra*, section A.3.

## IV.  CONCLUSION

Based on the foregoing, the court **GRANTS** Experian's motion for

summary judgment and **DISMISSES** this case **WITH PREJUDICE**.


Done the 16th day of September, 2013.


_____

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE